## Ouerbacker et al. v. City of Louisville et al.

Feb. 13, 1940.

Carroll & McElwain for appellant.

Hal. O. Williams and Luther M. Roberts for appellee City of Louisville.

Peter, Heyburn, Marshall & Wyatt for appellee Eady Co.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF— Reversing in part and affirming in part.

This appeal involves the question whether or not part of the cost of improvement of a section of Spring Drive in the city of Louisville was properly assessed against property belonging to appellants, as provided in Section 2833, Kentucky Statutes, which provides, among other things, that when the improvement is the original construction of any street, road, lane, alley, or avenue, such improvement, except as provided in Kentucky Statutes, Section 2839, shall be made at the exclusive cost of the owner of the lots in each fourth of a square to be equally apportioned by the Board of Public Works, etc., and "Each subdivision of the territory bounded on all sides by principal streets shall be deemed a square."

For the purpose of making the assessment for the costs of the improvement of Spring Drive the city treated as a "square" in contemplation of the Statutes, supra, all the property bounded by Spring Drive on the east, Grasmere Drive on the south, Hampden Court on the west and Speed Avenue on the north, and assessed appellants' property the sum of $2,082.17, less, however, 30% of the cost paid by the federal government, leaving a balance of $1,457.52, to be paid by the appellants.

It will be observed from the above description that Grasmere Drive intersects with Hampden Court at the southwest corner of the square or boundary indicated above. However, going north from the southwest corner of the square, Hampden Court is intersected on the east

by Kenilworth Place, less than half way between Grasmere Drive and Speed Avenue. Kenilworth Place runs slightly northeastwardly from Hampden Court to approximately the center of the square and intersects with an "Unnamed Street" which extends from that intersection north to Speed Avenue.

Appellants refused to pay the assessment upon the ground that the "Unnamed Street," extending north from the east end of Kenilworth Place to Speed Avenue and abutting appellants' property on the west side, should have been treated as a "principal street" and made the northwest boundary of the square, instead of that part of Hampden Court north of its intersection with Kenilworth Place to Speed Avenue.

Upon appellants' refusal to pay the assessment appelle brought this action in the Jefferson circuit court seeking judgment for the sum of the assessment against appellants' property with 10% penalty thereon.

By answer and other subsequent pleadings and stipulations of the parties issue joined upon the question whether or not the "Unnamed Street" should be treated as a "principal" street in the meaning of the statute, supra. The chancellor found from the evidence, which consisted mainly of exhibits in the nature of official maps of the city, and various ordinances, etc., that the "Unnamed Street" was a "dedicated and accepted street" of the city of Louisville, but not a "principal" street for the purpose of estimating or apportioning the cost of street improvement assessments and rendered judgment against appellants for the principal sum of the assessment against their property, but denied the penalty. Appellants have appealed from that part of the judgment adverse to them and appellee has prosecuted a cross-appeal from that part of the judgment refusing to allow the penalty.

The substance or effect of the various ordinances, maps, and other official records of the city of Louisville relating to that section of the city embraced within the territory bounded by the various streets in question, including the "Unnamed Street," is agreed upon and stipulated by the parties. We will consider those items of the stipulation pertinent to the issue—whether the "Unnamed Street" is, or should be treated as, a principal street for the purpose in question.

It is stipulated that on March 30, 1907, the Highland Realty Company executed and acknowledged a certain plat of dedication designated as "Plan Kenilworth" and dedicated to public use the streets and avenues shown thereon, excepting only the alleys in block 3 (which does not affect appellants' property). The plat and dedication was approved by the Board of Public Works of the City of Louisville on April 1st, 1907, and also approved by the county judge of Jefferson county on said date, acknowledged, delivered and recorded by the clerk of the Jefferson circuit court, and the "Unnamed Street" now in question as shown on that map was then designated as an "Avenue." That since the dedication the "Unnamed Street" in said area has been continuously carried and shown as a public way of the city of Louisville upon the books and maps of the assessor of the city and the city assessor's map covering block no. 2611 of the city shows Kenilworth Place as the southern boundary of that block; and that the "Unnamed Street" is the eastern boundary of the block; and the same map shows that the area designated as block no. 2623 (west of block no. 2611) is bounded on the west by the "Unnamed Street." The "Unnamed Street" is 30 feet wide and 354 feet in length, i. e., from its intersection with Kenilworth Place extending north to its intersection with Speed Avenue, and has never been assessed or taxed as private property to any private owner since the filing of the plat of dedication in 1907. That portion of the city containing the said area was annexed to the city by ordinance of 1922. Also by ordinance adopted February 8, 1933, the city established an official map of the city of Louisville including the "Unnamed Street."

It is further stipulated that in the year 1928 the city of Louisville authorized the original improvement of that portion of Hampden Court lying between Speed Avenue on the northwest to the center line of Kenilworth Place, and in apportioning the cost of that improvement against the property on the northeast side of Hampden Court that area designated as "Unnamed Street" was adopted as the "northwestwardly" (from the map before us it is apparent that the word "northwestwardly" was inadvertently used and should be "northeast") boundary of the square contiguous to said improvement and assessment was made only against the property lying between Hampden Court and the "Unnamed

Street'' instead of extending on eastwardly to Spring Drive. It appears however, that the ordinance providing for the improvement called for a line extending from Hampden Court halfway to Spring Drive. But in making the assessment or apportionment for the improvement the Board of Public Works recognized the ''Unnamed Street'' as a principal street as indicated above and this was adopted and approved and the property owners paid on that basis.

It is further stipulated that in March, 1925, the city of Louisville adopted an ordinance providing for the improvement of that part of Speed Avenue lying immediately west of Spring Drive and extending west to the center line of the ''Unnamed Street.'' The ''Unnamed Street'' is referred to in the title and body of the ordinance as ''the 30' avenue 378 11/12 feet northeast of Hampden Court.''

It is further stipulated that in March, 1925, the city of Louisville adopted an ordinance providing for the improvement of that part of Speed Avenue lying immediately east of Hampden Court extending to the center line of the ''Unnamed Street,'' the latter being referred to as the ''30' avenue 378 11/12' northeast of Hampden Court.''

It is also stipulated that in all conveyances of the property now owned by the defendant, abutting on the ''Unnamed Street'' on the southeast side thereof, the southwest boundary of said property has been referred to as ''Kenilworth,'' and that this description has been uniformly used and followed in all conveyances of defendants' property including previous deeds down to the defendants' deed which was executed in 1927.

It is further stipulated that the ''Unnamed Street'' is unimproved, partly overgrown with trees and shrubbery having no constructed carriageway and in parts is not passable to travel of any sort except persons on foot, and the city of Louisville has never expended any sum whatsoever for the improvement of that area. The southeast end of the street, to a distance of approximately 100 feet, provides an entry way to a garage located upon the property belonging to the defendant Ouerbacker, and the northeast end thereof to a distance of approximately 100 feet provides an entry way to a garage located on the south side of said way and at

some time has been partly paved with cobble or other coarse stone. The space between said two end portions is totally impassable to vehicular traffic. No houses have been constructed fronting upon the "Unnamed Street" and the same condition obtains with regard to both of the areas designated as "alley 15' " and "alley 10' " on the plat of Kenilworth, which two said alleys open into the "Unnamed Street."

It is thus seen from the above stipulated facts, that the city of Louisville by its official maps had designated and recognized the "Unnamed Street" as a street of the city, or, in the language of the chancellor, an "accepted and dedicated" street. Furthermore, it is shown by the stipulations that on various occasions in apportioning cost of the improvement of other streets adjacent to and affected by, or within the territory of, the "Unnamed Street," it has been officially treated as a principal street and apportionment of the costs of such previous improvements made upon that basis. We concur with the chancellor in his finding that the "Unnamed Street" is an "accepted and dedicated street of the city," but whether he was correct in holding it not to be a "principal" street within the meaning of the statute presents a more serious question.

The case of Koop v. Henry Bickel Co., 168 Ky. 496, 182 S. W. 617, is substantially, if not precisely, in point with the case at bar. The position of the streets and squares involved in that case are described in the opinion and a reference to it is sufficient without repeating them here. The basis of contention in that case was that neither Keats Avenue nor Jane Street is a principal street within the meaning of Section 2833 of the Statutes. It was insisted that Keats Avenue and Jane Street were not principal streets because, apparently of their nonvehicular or traffic use and it was impracticable to improve them. It was pointed out that in Keats Avenue there is a fall of 57 feet and the extension of the avenue beyond that point was impracticable. Also Jane Street was a public way of irregular width, being 20 feet wide at some places and 40 feet wide at others. It was argued that the square in question in that case was not bounded by principal streets because of the conditions of Keats Avenue and Jane Street as indicated above. In disposing of this question the court said:

"The argument is, that this square is not bounded by principal streets because neither Keats avenue nor Jane street is at present a practicable route for travel. In our opinion, the test to be applied is not whether the side streets are practicable or convenient routes for travel, for if that view were adopted the validity of street assessments would depend on the physical conditions prevailing rather than the actual existence of the streets themselves. In view of the uncertainty and confusion that would result from such a rule, we conclude that the only test to be applied is whether or not the streets have been dedicated and accepted. The evidence clearly shows that Jane street and Keats avenue have been dedicated for a number of years, and that the city has constructed sewers along them and otherwise exercised control over them as streets. These facts are sufficient to show acceptance. Unless this rule be adopted, the portion of the territory lying between Sycamore avenue and Letterle avenue would be exempted from taxation for street improvement when Letterle avenue is improved."

It is to be noticed from the above that the city had constructed sewers along Keats Avenue and Jane Street, while it does not appear in the present case that the city had constructed any sewers or attempted any improvements on the "Unnamed Street," but that fact does not distinguish that case from the present one, since it is obvious that the Koop case was decided upon the theory and principle that Keats Avenue and Jane Street were "dedicated and accepted" streets of the city, a fact conclusively shown in the present case. The construction of the sewer upon those streets was incidentally referred to, perhaps, as an additional reason for the court's conclusion, rather than the decisive point. Applying the stipulated facts in the present case to the conclusion of law reached in the Koop case, supra, it would result that if the "Unnamed Street" be not treated as a principal street the property lying on the west side of the "Unnamed Street" would escape or be exempted from taxation for street improvement if and when the "Unnamed Street" should be improved, which, obviously, is more practicable and likely than the improvement of Keats Avenue and Jane Street in their described condition in the Koop case, supra. It is not

shown that there are any falls, precipices, or other unusual condition to be contended with in the improvement of the "Unnamed Street" involved in the present case. It is between 350 and 400 feet long and 30 feet wide. Allowing 5 feet on either side for a sidewalk there would still remain 20 feet for driveway or vehicular traffic, which of course, is about the usual width of streets in residential sections and, perhaps, in some business sections.

Also in Marret v. Jefferson County Const. Co., 161 Ky. 845, 171 S. W. 396, 397, in discussing a question similar to the case at bar, the court said:

"People purchasing lots have the right to look at the adjoining streets and determine whether or not the property purchased will ever be called on to bear any part of the cost of constructing these streets. When they see a street that has been dedicated to public use, they have a right to conclude that it is a principal street within the meaning of the statute, and should not be required to speculate as to whether or not it is a street of such peculiar character that it could never be originally constructed at the cost of the abutting property owner. We therefore conclude that a principal street, within the meaning of the statute, is a principal thoroughfare that has been dedicated to the use of the public. This rule will enable the general council to know with reasonable certainty what assessment burdens abutting property owners will have to bear, and to regulate street improvements accordingly. It will also give to the abutting property owner and those who expect to become abutting property owners a reasonable basis for measuring the burden which the abutting property will have to bear."

The rule enunciated in the above quotation is peculiarly applicable to the facts of the present case. Appellants purchased their property in 1927, long after the "Unnamed Street" had been accepted and dedicated by the city as a public way, and after it had been treated as a principal street in making assessments for the improvements of other streets in that territory.

Appellee cites and relies upon various cases including Reed v. Louisville Asphalt Co., 233 Ky. 368, 25 S. W.

(2d) 1038; Vernon v. George M. Eady Co., 247 Ky. 48, 56 S. W. (2d) 552; Home Laundry Co. v. City of Louisville, 168 Ky. 449, 182 S. W. 645; and Riley v. Buchanan, 116 Ky. 625, 76 S. W. 527, 63 L. R. A. 642, 3 Ann. Cas. 788.

Upon examination of these cases we find that the facts are not analogous to the facts in the present case and do not support appellee's position.

The stipulated facts, particularly the conduct of the city in treating the "Unnamed Street" as a principal street for the purpose of making previous assessments for the cost of other streets, together with other record evidence, considered in the light of the authorities herein cited, impel us to the conclusion that the "Unnamed Street" should be treated as a principal street in making the assessment in question against appellants' property, and that the chancellor erred in holding to the contrary.

Wherefore, the judgment is reversed upon the appeal and affirmed upon the cross-appeal, and remanded for proceedings consistent with this opinion.