## Home Laundry Company, et al. v. City of Louisville, et al.

(Decided February 16, 1916.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Municipal Corporations—Streets—Public Way Defined.—A street is a public way through a city, town or village, and while a street, in the ordinary acceptance of the term, contemplates a carriage way and a footway, a public way is, however, nevertheless a street, although its use is confined to pedestrian travel only.

2. Municipal Corporations—Streets.—The dedicators of a public way may impose any conditions as to its use, which they may desire, and may dedicate it to pedestrian travel only.

3. Municipal Corporations—Streets—Dedication.—Ordinarily, when a public way is dedicated as and for a street, without any words which limit its use, it should be considered as within the contemplation of the parties that it is. dedicated for all the uses for which a street is ordinarily used, and that the abutting property owners have all the rights peculiar to such owners in the use of an ordinary street.

4. Municipal Corporations—Abutting Owners—Streets.—One of the rights which an abutting property owner has ordinarily in a street, which is peculiar to himself, and in which the public does not share, is the right of ingress and egress to and from his property with vehicles, to and from the street, if necessary to his enjoyment of the property.

5. Municipal Corporations—Abutting Owners.—The abutting property owner may make any reasonable use of the street, which will not interfere with the enjoyment of it by the public, and, as the public needs increase, his rights may grow less.

6. Municipal Corporations—Streets—Dedication.—The dedicators of a public way may require an acceptance of it with all the conditions which they impose upon it in the dedication, or that it be not ac-

cepted at all, but they may waive the conditions of the dedication if they desire.

7. Municipal Corporations—Streets—Dedication.—If a·dedication is made for a specific and defined purpose, the subject of the dedication can not be used for any other purpose, if those having rights under the dedication make seasonable objection to its misuser.

8. Easements—How Public May Acquire.—The public may acquire an easement in a public way by adverse user for the statutory period, and property dedicated for a public use may be lost to the public through the adverse possession of an individual, for the statutory period, accompanied with notice of his hostile intentions.

9. Municipal Corporations—Abutting Owners—Streets.—A municipality holds the streets for the benefit and use of the public, in the nature of a trustee, but the peculiar right of an abutting property owner to ingress and egress to and from his property with vehicles is a private right of his own, which the city does not hold as a trustee for him, and he may lose such right by an adverse user by the public of such a kind, that such right is denied to him for the statutory period.

DODD & DODD for appellants.

PENDLETON BECKLEY and JOSEPH M. LEE for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

Within the square embraced by Market Street, upon the north; Jefferson Street upon the south; Fifth Street upon the east; and Sixth Street upon the west, in the city of Louisville, is a short, narrow, public way, known as Court Place. Upon the south side of this square and bordering upon Jefferson Street, is situated the lot upon which stands the main building of the Jefferson county court house. To the east of the court house, which stands immediately upon Jefferson Street, midway of the lot, and between it and Fifth Street, there is a vacant area, which is enclosed by an iron fence, resting upon a stone base. A similar area and similarly enclosed is situated upon the west side of the court house and between it and Sixth Street. Immediately north of the main building of the court house and extending from Fifth to Sixth Street is Court Place. It is sixteen feet in width. To the north of it, and abutting upon it, is the St. Nicholas Hotel, the buildings of the Home Laundry Company, the Baldwin Book Company, the annex to the court house, and the buildings of the Kentucky Title Company, which occupies the·corner of Court Place and Fifth

Street, as the St. Nicholas Hotel does the corner of Court Place and Sixth Street. The main building of the court house is connected with the annex by a covered way, which extends from one to the other, over Court Place, at such a height as not to interfere with a passing wagon, cart or automobile. From Sixth Street to the Kentucky Title Building, Court Place is paved with a material, which is called granitoid No. 2, the body of which is composed chiefly of cement, and to which is added a small amount of sand. This paving extends from the buildings upon the north edge of Court Place to the stone base of the fence upon the south edge, from Sixth Street on to the Kentucky Title Building; and from there to Fifth Street, a portion of the way is paved with the material mentioned and the remainder of it with flag stones. From the court house to Fifth Street, and on the south side of Court Place and adjoining it, the county of Jefferson has had constructed, upon the court house lot, a driveway ten feet in width, and built of vitrified brick, for the purpose of hauling in coal for the use of the court house, and removing ashes and filth therefrom. The driveway terminates at the rear of the court house, in an area which is paved with vitrified brick and sufficiently large to allow incoming teams with vehicles to be turned around so as to go out again to Fifth Street. This driveway and paved area, at the rear of the main building of the court house, adjoins the paved surface of the Court Place upon a level with it. Court Place is paved as sidewalks are usually paved, and the driveway from the court house to Fifth Street is constructed in the manner of streets for the passage of vehicles.

The appellant, Home Laundry Company, is a corporation, and its co-appellants are the sole owners of all the stock of the corporation, and are the owners of the property abutting upon Court Place, upon the north side, from a point seventy-three feet and five inches, east of Sixth Street, along Court Place, to a point one hundred and thirty feet east of Sixth Street. This property extends to the north about ninety-five feet, where it connects with another lot owned by appellants, and which extends at right angles to the property on Court Place to Sixth Street, upon which it has a front of twenty feet. All of the real estate described is covered by one building, in which appellants conduct a laundry. The office is on the portion of the building which fronts upon Sixth

Street, but the machinery necessarily used in the business, including the boilers and engines, is located in the portion which fronts upon Court Place. The appellants have no practical way by which to get the coal, which is necessary to be used in propelling their machinery, into the building wherein the machinery is located, except to bring it along Court Place from Fifth, Street to the portion of their building which fronts upon Court Place. The appellants purchased a portion of the property, which fronts upon Court Place, in 1894, and at the same time they obtained a conveyance to that portion of it which has its front upon Sixth Street. Since that time they have acquired the other property which adjoins the first purchase and has its front upon Court Place. The deeds by which the property upon Court Place was conveyed to them called for it as one of the boundaries of the property, and they claim that they made the purchase because they understood that it was situated upon a street of the city, and they would not have otherwise acquired it. From 1894 up to the bringing of this suit, the appellants secured the necessary coal for their plant by having it brought in carts in at the entrance to Court Place, which is upon Sixth Street, and along Court Place to their building, where a door was opened, to which the rear end of the cart was turned and through the door the coal was unloaded into the building. This was the method of the delivery of the coal to their building during fair weather, but when the surface of Court Place was wet from rain or snow, or when ice or snow covered it, the coal was unloaded at the entrance to Court Place, from Sixth Street, and was brought from that point to their building, a distance of less than one hundred feet, in wheelbarrows, along Court Place. Coal was received for the operation of the plant twice each week, and it was shown by the proof that on some occasions the way was practically obstructed by the cart and animals attached for as much as forty minutes.

The chairman of the Board of Public Safety having received a complaint from one of the judges of the court, which had its sittings in the court house, that the noise from automobiles and vehicles upon Court Place was interfering with the conduct of the court, set an officer at Court Place, with directions to enforce the ordinance of the city, which prohibited persons from placing or

maintaining a vehicle of any kind upon or over any sidewalk, or to ride, lead, drive or place any beast of burden or vehicle on or over any sidewalk, otherwise than in going to and from the premises occupied or owned by such person, etc. The officer refused to permit coal to be hauled in a cart along Court Place to appellant's premises, when they filed this suit against the city of Louisville, the members of the Board of Public Works and the Board of Public Safety, and sought an injunction to restrain the appellees from interfering with them in hauling coal to their premises, and from interfering with other persons in going to and from their premises with vehicles.

After the taking of a great deal of proof by each side, the cause was submitted and tried, and resulted in a judgment denying appellants the relief sought, and dismissing their petition. To this judgment they excepted and appealed to this court.

The contention of appellants is, that Court Place was originally dedicated for a street, in the general and ordinarily accepted meaning of that term, and being such a street, they, as a part of the general public, are entitled to use it as a street, and as abutting property owners, have a right to ingress and egress from their property with teams, and to haul the fuel necessary for the conduct of their business, machinery and other things necessary over the street to their place of business and the products of their business therefrom.

The contention of appellees is, that the way was accepted as a street for the use of pedestrians only, and has been so used, and that as abutting property owners, the appellants have no right to use it for the purpose of hauling thereon with teams, for any purpose, or to pass over or upon it with vehicles of any kind, but may use it as the general public does, as a footway.

To determine the right of these diverse contentions, it will be necessary to look into the history of Court Place. It had its origin in a deed of dedication executed by the abutting property owners, of which the city as a private owner of property was one, and which seems to have been delivered not earlier than the 17th day of October, 1851. The deed was acknowledged by the mayor on the 7th day of October, 1851. The authority of the mayor for his action was a resolution of the General Council, dated on September 19, 1851, by which he was

authorized to give eight feet of the city's property "for public use" in the rear of the court house lot, provided the owners of property on the north side of Court Place would dedicate "for public use" eight feet, "and provided the said street is only to be used by foot passengers, and not for wagons, carts or drays." By a resolution of the General Council, which was adopted on March 27, 1852, the mayor was authorized, by appropriate deed, to dedicate for public use "as a footway" so much land as should not exceed eight feet, when the abutting property owners on the north side of Court Place should dedicate to public use a strip of ground described in a plat, which we presume is now the eight feet comprising the north side of Court Place. The deed, however, by which Court Place was dedicated to public use, did not contain any provision to the effect that it was to be used by pedestrians only, or as a footway, and was not to be used by wagons, carts or drays. The deed, after describing Court Place in terms which sufficiently indicates its location, used the following language:

"And to that end the parties aforesaid now hereby and by these presents dedicate for a street, which they denominate Court Place, the land between Fifth and Sixth cross Streets, of the width of sixteen feet, having for its center the dividing line aforesaid."

No formal acceptance of Court Place as a street or thoroughfare of the city was ever made by an ordinance of the General Council, but, previous to March 21, 1853, the city, as a governmental entity, had taken charge and control of Court Place, and had caused it to be improved, at the cost of the abutting property owners, of which the city was one, as it is now. This appears from a resolution of the General Council, adopted on March 21, 1853, apportioning the costs of constructing Court Place, and designating the amounts to be paid the contractor by each of the abutting property owners. The proof shows that the construction at that time consisted of red brick, laid flat, in the manner of constructing sidewalks and footways, at that time, and at and across the entrance from Fifth and Sixth Streets to Court Place, a curbing several inches in height was constructed, which made it very impractical to get into Court Place with a vehicle. The proof shows very satisfactorily that Court Place was never thereafter used as a carriage way. The persons who occupied the abutting property obtained their

fuel by causing it to be unloaded from the vehicles at the entrance at Fifth and Sixth Streets, and transported it in wheelbarrows from the entrance to their respective places along Court Place. The public did not consider it a carriage way, because it made no such use of it, and neither did the abutting property owners. In 1901 Court Place was reconstructed, in the manner it now is, by an ordinance of the city, which apportioned the costs among the abutting property owners. The curbing across its entrance at Fifth Street is several inches in height, and the curbing across its entrance from Sixth Street has, by use or disintegration, or a design of the engineer of the city, been reduced to one and a half or two inches in height. The granitoid with which the surface of the street or way is covered is only one-half inch in thickness. There does not appear to have ever been any objection, by any of the abutting property owners, to the manner of the original construction of the way or to the uses to which the construction limited it, nor to the manner of the reconstruction in 1901, or to the uses to which it necessarily limited it.

Passing over the question as to the authority of the mayor to join in the deed as the representative of the city for the dedication of a portion of the city's ground for a public way or street, without a reservation in the deed limiting its use to persons upon foot, as directed by the ordinance, and whether or not such deed, on account of that omission, was valid, and which is not necessary to be decided, the deed of dedication did not actually contain any such limitation as to its use and is not ambiguous in its terms, and specifically dedicates the ground for a street. While it is apparent that the city, speaking through its legislative council, never intended the creation of a street upon Court Place, other than one limited to pedestrian travel, the terms of the deed executed and delivered would seem to confer upon the general public such rights to its use and to the abutting property owners such rights to its use as may ordinarily be made of a street. The question then arises, What is a street, and what uses may ordinarily be made of a street? A street is a public way through a city, town or village. 28 Cyc., 832. Ordinarily a street is a public way for the travel of footmen, and for the travel of persons upon horseback and in vehicles, and for the travel of vehicles, which are necessary to be used in

transporting the commodities .of traffic, and whatever may be used by the public for their pleasure or necessities. Ordinarily a street in a city or populous town . contemplates a carriage way and a footway. The governing bodies of cities and towns are ordinarily and generally invested with authority to regulate and control the use of the streets, and may designate a portion of the street for the use of footmen and a portion for the use of vehicles. Georgetown v. Hambrick, 31 R., 1276. A public way is, however, nevertheless a street, though its use is confined to travel by pedestrians only. Atlanta & W. P. Ry. Co. v. Atlanta B. & A. R. Co., 54 S. E., 736, 125 Ga., 529. The dedicators of a public way may impose any conditions as to its use which they may desire, and there is no doubt that a street may, by its dedication, be limited to the use of pedestrians. Trenton Water Power Co. v. Donnelly, 7 N. J., 651; Poole v. Huskinson, 11 M. & W., 827; Hughes v. Bingham, 135 N. J., 347. It is within the authority of a city, if beneficial to the public, to control by reasonable regulations the use which may be made of certain streets, as by limiting the weight of loads which may be hauled over them upon vehicles having tires beneath a prescribed width, and it has, also, been held that a municipality may prohibit the moving of a load beyond a certain weight over a paved street. People v. Wilson, 16 N. Y. Supplement, 583.

In addition to the rights, which, as a member of the community, an abutting property owner has in the street, he has rights to the use of the street, which are peculiar to himself, and one of these rights is ingress and egress to and from his property, over and from the street. Transylvania University v. City of Lexington, 3 B. M., 25; Pickerel v. City of Carlisle, 135 Ky., 134; Railroad Co. v. Combs, 10 Bush, 389; Garcan, etc. v. Railroad Co., 11 R., 492; Lexington & Ohio R. R. Co. v. Applegate, 8 Dana, 289. The abutting property owner .may make any reasonable use of the street which will not interfere with the enjoyment of the use of it by the public, and as the public needs increase, his rights may grow less. 37 Cyc., 207, 208. What may be deemed a reasonable use must depend much on the "local situation and much on public usage." Van O'Linda v. Lothrop, 32 Am. Dec., 261.

It is now insisted that. the dedication of Court Place being for a specific and defined purpose—that of a

street—and no limitations as to its use being imposed, it necessarily follows that it was in contemplation of the parties who made the dedication, that it should be used in the ordinary way of using a street—that is, for a carriage way, as well as a footway, and that appellants being abutting property owners, have a right of ingress to and egress from their property with vehicles to haul coal to their property, and to haul away their products from it, and this right can not be taken from them without compensation being made; and further, that it can not be lawfully used, except for the purposes for which it was dedicated, and the uses for which it was dedicated can not be limited. It can be, however, properly said, that, although a street is a public way and a dedication of a way for a street, without other words, would ordinarily carry with it the inference that it was within the contemplation of the dedicators that it should be used for all the purposes for which a street is ordinarily used, and that the abutting property owners would have all the rights to its use which they ordinarily have in an ordinary street; but, if the way dedicated is too narrow for the practical passage of vehicles, or its physical characteristics, location, and situation, as regards the public and the business of the public, are such that its use as a carriage way was highly improper or injurious to the use of it by the public, it could very well be doubted, that, it was reasonably in contemplation of the parties who made the dedication, that it should be devoted to a carriage way, for which it was physically unfit, and such use was unreasonably injurious to the public and its use of it.

The further fact that the act of the legislature, which became a law on March 24, 1851, denied to the General Council of the city the right to accept the dedication of a street, which was less than sixty feet width, would lead to the conclusion that Court Place was neither dedicated nor accepted, as a street, in the ordinary use of that term.

It is true that an acceptance of a dedication, in violation of the conditions of the grant, is a nullity, if objection is seasonably made.

It is also true that if a dedication is made for a specific, limited and defined purpose, the subject of the dedication can not be used for another purpose, if those having rights under the dedication make seasonable objection to its misuser. It is, however, the law of this

jurisdiction that a municipality or the public may acquire a right to the use of a street by adverse user, and having acquired the right to the use of the street, may lose it by the adverse user of another. The municipality, in its governmental capacity, holds the street in the nature of a trustee for the public, and the public may acquire an easement in a street through the action of the municipal authorities for the benefit of the public, or by adverse user by the public for the statutory period. When the municipality, through its officers and agents, takes and holds lands for a street, adversely to the rights of the owner in the fee, for the statutory period, accompanied by a use of it by the public, in the manner necessary to create an easement by prescription, in the street, the title to its use as a street becomes vested fully in the public. Some of the opinions of the court, which go to support this doctrine, are based upon the fiction, that after fifteen years' continuous, visible, notorious, and adverse use under a claim of right by the public of a way as a street or highway, it is presumed that the use of the way had its origin in a grant, but the essential element necessary to create the title by prescription is the adverse use of the way as a street for the statutory period. Porter v. City of Clinton, 24 R., 2435; Elliott v. Treadway, 10 B. M., 22; Smythe v. Cleary, 11 R., 328; Com. v. Logan, 5 Litt.; 286; Frazer v. Hutchinson, 10 R., 871; Whit v. Hughes, 66 S. W., 281; L. & H. & St. L. Ry. Co. v. Com., 104 Ky., 35; Gatewood v. Cooper, 38 S. W., 690; Wilkins v. Barnes, 1 R., 328; Wright v. Willis, 63 S. W., 991; K. C. Ry. Co. v. Paris, 95 Ky., 627.

Upon the other hand, an individual may, by adverse possession, for the statutory period, of lands dedicated for a public use, acquire title to them. Hegan v. Pendennis Club, 64 S. W., 464; Terrill v. Bloomfield, 21 S. W., 1041; Bosworth v. Mount Sterling, 13 S. W., 920; Cornwall v. Louisville, etc. R. Co., 87 Ky., 72; Dudley v. Frankfort, 12 B. M., 610; Rowan v. Portland, 8 B. M., 232. The principle allowing the acquisition of easements in streets by adverse user of the public and the loss of such easement by the public by adverse possession of another of a street dedicated to the public use, remains unchanged, except for the statute of 1873, which provided that the statute of limitations will not begin to run in favor of an individual against a town or city for the use or possession of a street until the party who relies or

intends to rely upon adverse possession of it has given the authorities of the municipality notice of his intentions. Ky. Statutes, sec. 2546, 1915. The peculiar rights of an abutting property owner to the use of a street for ingress to and egress from the property with teams and vehicles is a private right of his own and one not shared by the public with him, and the municipality does not hold such right as a trustee for him. Hence, it is a right which he may lose by an adverse user, under circumstances which justify the enforcement of that doctrine. Hence, when the municipality, in 1853, accepted the dedication of Court Place for the public use, if it was designed by the dedicators as an ordinary street, over which the abutting property owners had the right to haul with vehicles to and from their property, when it was accepted as a street for pedestrians only, and was so taken control of by the municipal authorities and so constructed as to constitute notice to the public and to every one, that its use was limited to pedestrians, as a street in the nature of a sidewalk, and not for use of vehicles, the abutting property owners then had the right to enforce the conditions of the dedication and to require its construction in such a way that it could be used as an ordinary street, over which they could use vehicles. If they had the right of egress and ingress to their property with vehicles, then the action of the public, through the municipality, by so constructing the street as to limit its use to pedestrians, only, was a direct and intentional violation of such right, and being a private right peculiar to themselves the right to assert such an easement, in the way, was barred after the period of fifteen years had expired. The action of the municipality in constructing and holding the street as a walkway for pedestrians only, and the use made of it by the public as such was open, visible, notorious, continuous, and necessarily adverse and hostile to the claim of an easement by the abutting property owner to drive teams and vehicles over it. The physical characteristics of the street and the manner of its construction and use have been notice to each successive abutting property owner of the use to which it has been limited since its acceptance, until the present. It does not seem that any one designing to acquire property upon it could have been mislead as to the uses which he could make of it, and with notice of the fact that it was limited to the use of pedestrians, he would be estopped to complain that he is not permitted to use it for vehicles.

A dedication is an offer and must be accepted before it is complete. The dedicator has the right to require the acceptance to be made according to the terms of his offer, or not at all; but it is well settled that he can waive any conditions of the offer. If the dedication is accepted without some of the conditions imposed, and the dedicators assent to it and waive the conditions, surely they can not thereafter complain, especially after the acceptor of the dedication has expended money and labor upon it, in fitting it for its purpose. Forney v. Calhoun Co., 86 Ala., 463; Port Huron v. Chadwick, 17 N. W., 929. In the last mentioned case, *supra,* it was held, that if the dedicator desires to avoid his gift for a failure to comply with' the conditions or restrictions imposed upon the gift, he must act promptly. When the municipality accepted the dedication of Court Place, which it did by causing it to be improved as a sidewalk, in the year 1853, the dedicators were still the abutting property owners, and it appears that they not only did not interpose any objections to its acceptance as a way limited to pedestrian travel only, but were assessed, and, we presume, paid the costs of the construction of the street, as then constructed. If they contemplated, when making the dedication, to retain the right peculiar to an abutting property owner to use vehicles in hauling to and from their property over it, their acts clearly show that they assented to the acceptance of the street as a walking way and not for use by vehicles. Having assented to such an acceptance and having thereafter abided by it, if not equitably estopped from ever complaining of being deprived of the right to haul over the street with vehicles, such right as an abutting property owner was barred after fifteen years. True, the right to haul with vehicles to and from his property, by an abutting property owner, is not lost by the mere failure to exercise the right, where the right is not denied to him, but where the exercise of his right is denied to him, the statute applies. The appellants could not acquire the right to use vehicles upon the way, by prescription, because since 1873 no prescriptive right in a public way can be acquired by an individual, unless he has given the governing authorities of the city notice of his intentions.

The use of Court Place as a carriage way by the municipal officers, by the occasional driving of a vehicle along it by an employe of the city, during a portion of

one year, does not create it a carriage way. The municipality holds the street as the trustee of the public, which is the *cestui trustent,* and its acts can not destroy the right of the public to preserve and use the street for its benefit, as a place free from obstruction of vehicle use.

The ordinance of the city which regulates the use of the sidewalks of the city does not authorize any one, at any time, to drive a vehicle or loaded wagon or cart along a sidewalk, longitudinally. In fact they forbid such use of a sidewalk, and the provisions in the ordinance, which prohibit one from driving on or over a sidewalk, otherwise than in going to and from the premises occupied or owned by such person, and then only at such times and in such manner as will not interrupt or inconvenience the traveling public, and the other section, which provides that nothing in the ordinance shall prohibit the necessary temporary use of the sidewalks, while actually receiving or shipping goods, wares or merchandise, and for putting up coal, provided sufficient passway is left for pedestrians, should be construed together, and have relation to sidewalks upon streets, which are used as streets are ordinarily used, and grants the privilege to drive across the sidewalk, and not along it longitudinally.

The appellants are not deprived of ingress and egress to or from their buildings, which front upon Court Place, for any purpose, nor deprived of their right to get in their fuel, as the other occupants of the way have done for over sixty years, except in isolated instances. They are only prevented from using the way or street as a carriage way, and considering the character of the street, the uses to which it has been put, the necessity for its preservation, as it now is, for the public benefit, its location and physical characteristics, such a restriction upon the use of the street does not appear to be unreasonable.

The judgment is therefore affirmed.

All members of court sitting.