## In re Appropriation of Easement for Highway Purposes.

(No. 766—Decided April 7, 1952.)

*Messrs. Bowman, Hanna & Middleton,* for appellants.

*Mr. C. William O'Neill,* attorney general, *Mr. Everett H. Krueger* and *Mr. Kenneth Adams,* for appellees.

SAVORD, J. This is an appeal on questions of law from a judgment of the Common Pleas Court.

In order to carry to completion plans for the construction and improvement of U. S. Route No. 25, generally known as the Dixie highway, at a point just south of Bowling Green, Ohio, the Director of Highways, on August 21, 1950, pursuant to statutory provision filed a resolution and finding declaring it necessary to appropriate certain lands belonging to appellants. Within the statutory period, appellants filed their petition in appeal. The cause coming on for trial, judgment was ultimately entered upon the verdict of the jury, and it is in respect to such judgment that appellants now complain.

The bill of exceptions discloses that the proposed improvement is a four-lane highway with limited access as contemplated by Section 1178-21, General Code; that appellants are the owners of a tract of land approximately 40 acres in size, located on the west side of the highway; that the north line of this particular parcel is the south corporation line of the city of Bowling Green, the parcel having a frontage of 385 feet on the Dixie highway; that on the southeast corner of this tract is located a house and barn; that prior to the appropriation there had been operated at a point slightly north of the house a used car lot; that the area thus used, from which the owners secured a rental, extended for approximately 300 feet along the Dixie highway and had a depth from the highway of 45 feet; that this area had been stoned; that also located thereon was a revenue-producing refreshment

stand, a septic tank and a water well; that the state is appropriating from this area a parcel 35 feet in width off the entire frontage or a total of .309 acre; that upon completion of the improvement, it will be approximately 28 feet from the new right-of-way line to the front porch, or 37 feet to the house; and that the plans contemplate one 14-foot opening located substantially at the location of the present opening approximately 100 feet north of the south line of this particular parcel and a future drive at the north line of the property, the width of same to be determined by the Director of Highways when such drive is finally established.

It appears further that appellants are the owners of a tract of land 14 acres in size located on the east side of the highway; that the southerly line of this particular parcel is an east and west road, known as Gypsy Lane road, the parcel having a frontage to the north in and along the Dixie highway of approximately 800 feet; that this parcel is bare land; that the state is appropriating from this parcel a triangular strip of land 53 feet in width at Gypsy Lane road and tapering to a point at the northwest corner of the property, such triangular strip containing .482 acre; and that the plans provide present access to this particular parcel by means of a 50-foot opening located about 50 feet south of the north line of the parcel and contemplate future entrances approximately 150 feet and 400 feet respectively therefrom, thus confining the owners to one present means of access, unless they are to avail themselves of the facilities provided by Gypsy Lane road, located at the extreme southerly end of the parcel.

The plans anticipate construction of a curb on each side of the highway, the installation of a solid dividing strip extending northwardly from Gypsy Lane road a distance of approximately 300 feet, and the installation

of precast concrete blocks from such point north to the corporation line, preventing, in some measure, vehicles crossing from one side to the other of the road.

By its verdict, the jury awarded the appellants as compensation for the .309 acre appropriated and located on the west side of the road $1,884.50, for the .482 acre appropriated and located on the east side of the road $1,090, as damages to the residue of the property on the east side of the highway $546 with interest from August 21, 1950, to date of verdict of $176, making a total award of $3,696.50. The jury apparently concluded that the residue of the property on the west side of the highway was not damaged, as no award was made with respect to this item. Judgment was entered on the verdict and motion of appellants for a new trial was overruled.

Appellants assign as error:

1. That the verdict of the jury and judgment of the court are contrary to the weight and sufficiency of the evidence.

2. That the verdict of the jury and the judgment of the court are contrary to the evidence.

3. That the verdict of the jury and the judgment of the court are contrary to law.

4. That the verdict of the jury and the judgment of the court are inadequate and do not fully compensate the appellants herein.

5. That the court erred in its charge to the jury.

6. That the court erred in excluding certain evidence at the trial of cause, and also in not admitting certain evidence, all of which was excepted to by appellants herein.

7. Other errors occurring at the trial and excepted to by the appellants.

8. That the court erred in overruling appellants' motion for a new trial.

Before entering upon a discusion as to the specific claimed errors, it appears proper to suggest that doubt exists as to whether the method pursued by either party in submitting testimony as to the value of the parcels taken and damage, if any, to the residue reflects the correct approach. Examination by counsel for both appellants and the state indicates a variety of formulae adopted for establishing value and damages. Bearing in mind the elements to be established, the rule reduces itself to a simplicity. In the last analysis, the elements are (1) the fair and reasonable market value of the property taken, and (2) the reduced value of the residue, to be determined after serverance of the property taken and without deduction for benefits, save special, if any, considering the effect upon such residue of the uses for which the appropriation is made. It follows, therefore, that there are but three questions to be propounded to a witness, subject to the right of cross-examination residing in the adverse party, namely, (1) what is the fair and reasonable market value of the area sought to be appropriated; (2) what is the fair and reasonable market value of the residue prior to the appropriation; and (3) what will be the fair and reasonable market value of the residue after the appropriation, the difference between the two latter figures reflecting the damages. 15 Ohio Jurisprudence, 841, Section 151, and authorities therein cited.

Application of the foregoing formula justifies the ruling of the trial court in excluding the testimony tendered in direct examination by D. C. Brackney as to the cost of the construction of a service road. While the evidence clearly proves that, no matter how either the east or west tract is subdivided or employed, the construction of a service road will be a definite necessity, this circumstance is but a factor entering into

determination of the value of the residue after the severance of the parcel appropriated. Testimony as to the cost of a service road was properly received in connection with the cross-examination by the appellant of Harold B. Kaufman, location and design engineer, a witness for the state. Undoubtedly, if the testimony sought to be elicited from Brackney had been tendered in rebuttal, the same then having become competent, should and would have been received.

Appellants complain of the action of the trial court in refusing to receive testimony tending to show loss of rental values arising by reason of occupancy of a portion of the appropriated west side strip. They submit that under the authority of *In re Appropriation by Superintendent of Public Works,* 155 Ohio St., 454, 99 N. E. (2d), 313, such testimony was competent. The unusual factual situation existing in the latter case, involving as it did several different interests or estates in the property sought to be appropriated, requires that the principles therein stated be accorded limited application rather than being accepted as setting aside the general rule as stated in *Columbus, Hocking Valley & Toledo Ry. Co.* v. *Gardner,* 45 Ohio St., 309, 13 N. E., 69; *Lakeshore & Michigan Southern Ry. Co.* v. *Cincinnati, Sandusky & Cleveland Ry. Co.,* 30 Ohio St., 604; *Powers* v. *Hazelton & Letonia Ry. Co.,* 33 Ohio St., 429, and similar cases. No better statement of the reason for the rule can be found than in the *Gardner case, supra,* where it is said: "If this inquiry was permissible, it would place it in the power of the plaintiffs, by private contract with the lessees, to fix their own basis of damages." The exclusion by the trial court of testimony with respect to rental values did not constitute error.

It is contended by appellants that the trial court erred in its charge to the jury, especially with respect

to that portion of the instructions having to do with the determination of damages independent of any benefits resulting from the improvement. Specifically, appellants characterize as prejudicial error that portion of the charge wherein the court instructed the jury as follows:

"Therefore, in determining the value of the property taken, you should make no deduction on account of benefits to the residue; but, although you will disregard the general benefits which may result to the property, you can consider any incidental benefit thereto which is blended with an incidental injury for the purpose of arriving at the extent of the injury sustained by the property."

The rule that any benegfits accruing to the residue are to be disregarded in fixing the value of the property appropriated finds its origin and foundation in Section 19, Article 1 of the Constitution of Ohio, the pertinent portion of which reads:

"* * * and such compensation shall be assessed by a jury, without deductions for benefits to any property of the owner."

It is to be noted that this section uses the word, "benefits," neither by expression nor implication attempting to classify benefits as "general," "special" or "incidental." It is to be recognized, however, that there are instances wherein either special or incidental benefits do accrue as the result of the improvement, and whether warranted by the Constitution or otherwise, courts in a proper instance have correctly instructed the jury that such special or incidental benefits might be considered. Such a situation was presented in *Cleveland & Pittsburgh Ry. Co.* v. *Ball*, 5 Ohio St., 568, in which case a ditch drained a swamp, making part of the owner's land valuable, although in draining the swamp, the destruction of a valuable

spring resulted. The criticized portion of the charge has apparently been developed to meet the factual situation encountered in the latter and similar cases. In a proper instance, we can not say that it is incorrect either in expression or substance, although lacking the concrete and explicit character which an instruction should possess. In the case at bar, however, there was not an atom of evidence tending to prove any benefit, special or incidental, accruing to the residue of the property and, therefore, the instruction was not applicable to the issue. It is true that throughout the entire charge the court cautioned against the deduction of benefits, nevertheless, we are convinced that the giving of the complained-of portion of the instruction was erroneous and operated to the prejudice of appellants.

Appellants' first four assignments of error are related, all in effect having to do with the claimed inadequacy of the verdict. It is undisputed that the property here involved is located in close proximity to the city of Bowling Green and in a rapidly developing area. All witnesses, whether for appellants or the state, conceded that in fixing values they appraised it as commercial property, the same constituting its highest and most advantageous use. The record amply justifies the property being so characterized and acceptance of such as its most probable use. The developed commercial use of the area immediately adjacent warrants such conclusion. It is likewise clear that the establishment of a "limited access" highway, confining the owners to the entrances as presently proposed, seriously affects the value of the residue of the property, requiring, as it inevitably must, no matter how subdivided, the construction of "service roads" on each parcel in order to connect with the means of ingress and egress provided. So far as the

record discloses, the cost of this construction must be borne by the owners and is a material factor in determining the damage to the residue. It is fundamental that the owner of land possesses an easement of access to the abutting highway at any or all points included within his frontage on such highway until such easement is extinguished by proper legal process. When such easement is sought to be extinguished, the owner is entitled to reasonable compensation, just as he is when land is actually taken. While the convenience of through vehicular traffic and the safety of travelers along the highway merit substantial consideration, the serving of these purposes can not be dignified to the extent of defeating the rights of the landowner without his being compensated. Ease and facility of access constitute valuable property rights for which the owner is entitled to be adequately compensated. While the interests of the general public are to be considered as dominant, it does not follow that such circumstances can operate to deny a substantial right of the property owner. The principle is recognized by legislative provision and holdings of the courts. Section 1178-21, General Code. The duty of fully protecting the rights of the property owner in the instance where a limited access highway is created is emphasized in *Burnquist, Atty. Genl.,* v. *Cook,* 220 Minn., 48, 19 N. W. (2d), 394.

The finding of the jury that the residue of the property on the west side of the highway was not damaged is against the weight of and contrary to the evidence. While the record discloses emphasized conflict in the testimony, not only as to the value of the parcels appropriated, but likewise as to the damage to the residue, we are convinced that when the cost of constructing necessary service roads and the limitation of access and all other circumstances, as revealed by the

record, are considered with respect to their effect, especially, upon the reasonable value of the residue, the verdict is grossly inadequate and can not be reconciled with the evidence in this case. In view of this fact, the principles expressed in *Sherer* v. *Smith,* 85 Ohio App., 317, 88 N. E. (2d), 426, apply.

We have considered all other assignments of error and find therein nothing resulting to the substantial prejudice of appellants.

Because of the error found in the charge and the inadequacy of the verdict, it follows that the judgment of the trial court must be and is reversed and this cause remanded for a new trial and for such further proceedings as are required by law.

*Judgment reversed.*

Fess and Conn, JJ., concur.