131 So.2d 683

### ST. CLAIR COUNTY

v.

### James A. BUKACEK et al.

### 7 Div. 447.

Supreme Court of Alabama.
March 23, 1961.

Rehearing Denied June 22, 1961.

Starnes & Holladay, Pell City, and Maurice F. Bishop, Birmingham, for appellant.

Beddow, Gwin & Embry, Birmingham, for appellees.

**326**

MERRILL, Justice.

This is an appeal from the Circuit Court of St. Clair County, from a jury verdict and judgment thereon in an eminent domain (condemnation) proceeding awarding appellee $4,000, instituted by St. Clair County to acquire land for a public highway. The condemned right-of-way for this controlled access highway ran through a forty acre tract where no highway had ever been built.

The main question presented is whether the jury is entitled to consider, in assessing damages, the deprivation or limitation of access to a controlled access highway when the highway is constructed on a new right-of-way, and where the landowner had no previous access rights to this highway.

The question is raised by the refusal of written charges two through eight and certain parts of the oral charge. In essence, these written charges enunciated the principle that where a new controlled access highway is constructed on a new right-of-way, the landowner had no previous right of access and no right was taken away from him which required compensation.

The court's oral charge was to the effect that access to a highway is a property right, and if the landowner is deprived of this right, then the jury should consider that loss or interference with that right in arriving at the just compensation to be awarded the owner.

Appellant cites the following cases holding that the landowner has no access rights to a new highway built under the facts prevailing here: City of Los Angeles v. Geiger, 94 Cal.App.2d 180, 210 P.2d 717; State,

By and Through State Highway Commission v. Burk, 200 Or. 211, 265 P.2d 783, 794; State v. Calkins, 50 Wash.2d 716, 314 P.2d 449; State ex rel. Rich v. Fonburg, 80 Idaho 269, 328 P.2d 60; State ex rel. State Highway Commission v. Clevenger, 365 Mo. 970, 291 S.W.2d 57. But those jurisdictions have different constitutional provisions and statutes than do we. Other cases are listed and considered in 43 A.L.R.2d 1072.

In McEachin v. City of Tuscaloosa, 164 Ala. 263, 51 So. 153, 154, it is stated that the only two states with the same language as Sec. 235 of our Constitution are Alabama and Pennsylvania. That section states that the condemnor in eminent domain proceedings "shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured or destroyed by the construction or enlargements of its works, highways, or improvements, * *." Most constitutions merely provide for just compensation for property taken by condemnation.

Title 19, § 14, Code 1940, states that "* * * in the condemnation of lands for ways and rights of ways for public highways, the commissioners may, in fixing the amount of compensation to be awarded the owner for lands taken for this use, take into consideration the value of the enhancement of the remaining lands of such owner that such highway may cause." We have held that the word "may" is construed as "must." Conecuh County v. Carter, 220 Ala. 668, 126 So. 132.

The underlying theory of all the cases cited by appellant is that there can be no detriment to a right which never existed and no compensation for a loss not sustained. And this theory is based upon the claim that an abutting landowner has no rights in a newly constructed highway until it is opened for travel, and the owner should not be compensated for the loss of a right of access which he never had.

By the same reasoning, it is clear that no benefits and no enhancement to the remain-

ing lands occur until the highway is opened for travel.

We cannot conceive that the Legislature intended that an owner's compensation should be reduced by consideration of benefits that might accrue only after the highway was opened, and not consider any damage to the right of access which would accrue when the highway is opened for travel. And we have approved holdings in highway condemnation cases where no damages were awarded for lands taken. Posey v. St. Clair County, 270 Ala. 110, 116 So.2d 743; Bates v. Chilton County, 244 Ala. 297, 13 So.2d 186; Conecuh County v. Carter, 220 Ala. 668, 126 So. 132.

█ The legislative intent is emphasized by the Controlled Access Facilities Act, 1956, 1st Ex. Session, No. 104, approved February 9, 1956, and listed as Tit. 23, §§ 141–148 in the Recompiled Code of 1958. Section 5 of the Act provides for the acquiring of property and property rights, "including rights of access, air, view, and light, by gift, devise, purchase or condemnation." This is a legislative recognition that the abutting landowner does have a property right of access which is subject to condemnation.

Furthermore, if the abutting owner had no right of access, there was no reason for that right to be specifically condemned in the eminent domain proceedings filed in this cause.

We have recently decided two cases involving controlled access highways. In Blount County v. McPherson, 268 Ala. 133, 105 So.2d 117, the new controlled access highway followed the course of the old highway, to which the abutting landowner had access. Additional land was taken to widen the right-of-way and the right of access to the new highway was condemned. We held that the landowner was entitled to be compensated for his loss of access to this controlled access highway when his access rights had been condemned along with his land for the new right-of-way.

In Blount County v. Campbell, 268 Ala. 548, 109 So.2d 678, 682, the new controlled access highway went through his property where no highway had ever been. His access rights to this new highway were condemned. His property did not abut on the old highway but one of the roads to the old highway was sealed off. We held that the taking of the land, the closing of one of the roads to the old highway, his loss of access to his remaining property, and the "inconvenience to the remaining tract resulting from the condemnation" were circumstances to be considered by the jury.

Surely, if the loss of indirect access is a factor or circumstance to be considered, then the denial of direct access by condemnation should be considered by the jury in determining the damages.

█ The well-established rule of compensation in a condemnation proceeding in this state where only a part of a tract is taken is that the owner is entitled to the difference between the value of the entire tract immediately before the taking and the value of the part remaining after the taking, giving effect to any enhancement in value to the part remaining in case the condemnation was for a public highway, as provided in Tit. 19, § 14, Code 1940. Morgan County v. Hill, 257 Ala. 658, 60 So.2d 838; Pryor v. Limestone County, 222 Ala. 621, 134 So. 17. In determining the value of the property after the taking, the jury should consider any factor or circumstance which would depreciate the value in any way, and this includes any effect that the completed project for which the land is condemned may produce on the remaining tract. Certainly this is so if it affects the ingress and egress to the useful portions of the property from the highway. Hooper v. Savannah & M. R. Co., 69 Ala. 529; Pike County v. Whittington, 263 Ala. 47, 81 So. 2d 288; Hatter v. Mobile County, 226 Ala. 1, 145 So. 151; McRea v. Marion County, 222 Ala. 511, 133 So. 278.

█ The authorities cited in the preceding paragraph hold that when the ways

of ingress and egress to a public highway are obstructed or interrupted, such obstruction or interruption forms a part of the injury to the land. And the compensation must be fixed by the valuation of the property as of the time of the taking, whether the time of the taking reverts to the filing of the petition for condemnation, or when the commissioners make their report, on which the probate court shall order the condemnation. Jefferson County v. Adwell, 267 Ala. 544, 103 So.2d 143.

It is, therefore, contemplated that the landowner's damages are to be assessed before the highway is built and that any benefits to his property are considered before the highway is ever built, much less opened for travel. Once again, this demonstrates that the principle stated in the cases cited by appellant that an abutting landowner has no rights in a newly constructed highway until it is opened for travel is not applicable under the statutes and decisions in Alabama.

■ In Blount County v. McPherson, 268 Ala. 133, 105 So.2d 117, 119, we said:

> "The overwhelming weight of authority is that the owner of land abutting on a street or highway has a private right in such street or highway, distinct from that of the public, which cannot be taken or materially interfered with without just compensation. Access to the highway is one of these private rights and is a property right, and the interference with the right of access of an abutting owner is an element of damage. 29 C.J.S. Eminent Domain §§ 105, 122 and 167; 39 C.J.S. Highways § 141, p. 1081. We have held that 'access to a public highway is an incident to the ownership of land abutting thereon,' City of Bessemer v. Brantley, 258 Ala. 675, 65 So.2d 160; and interference with such access is an element of damages. Hooper v. Savannah & Memphis R. Co., 69 Ala. 529.

> "Certain it is that appellee was entitled to have compensation for his loss of access rights to this limited access highway when those rights were sought to be condemned along with his land for the right of way of the highway."

The general rule of right of access is stated in 25 Am.Jur., Highways, § 154, p. 448:

> "The right of access to and from a public highway is one of the incidents of the ownership or occupancy of land abutting thereon. Such right is appurtenant to the land, and exists when the fee title to the way is in the public as well as when it is in private ownership. * * *"

This right has been called a common law right of access in Smith v. State Highway Commission, 185 Kan. 445, 346 P.2d 259, 266, where the court said:

> "The owner of property which abuts an existing street or highway has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the street or highway, and which are not common to the public generally. These private rights include certain easements, or appurtenant easements, such as the rights of access, of view, of light and air, and others. These rights are *property* of which he may not be deprived without his consent, except on full compensation and by due process of law.

> "It has consistently been held in this jurisdiction the right of access to and from an existing public street or highway is one of the incidents of ownership of land abutting thereon, sometimes called a common law right of access, which may not be taken from the owner by the public without just compensation. * * *"

The Court of Appeals of Ohio, in the case of In re Appropriation of Easement for Highway Purposes, 93 Ohio App. 179, 112 N.E.2d 411, 415, stated in reference to the condemnation of land for limited access highway:

"* * * It is fundamental that the owner of land possesses an easement of access to the abutting highway at any or all points included within his frontage on such highway until such easement is extinguished by proper legal process. When such easement is sought to be extinguished, the owner is entitled to reasonable compensation, just as he is when land is actually taken. While the convenience of through vehicular traffic and the safety of travelers along the highway merit substantial consideration, the serving of these purposes can not be dignified to the extent of defeating the rights of the landowner without his being compensated. Ease and facility of access constitute valuable property rights for which the owner is entitled to be adequately compensated. While the interests of the general public are to be considered as dominant, it does not follow that such circumstances can operate to deny a substantial right of the property owner. The principle is recognized by legislative provision and holdings of the courts. * * *"

It follows that when a property right is taken by condemnation, the owner of that property right is entitled to compensation for its taking.

We think it proper to show that on final analysis, there is little difference in the result reached in the cases cited by appellant and this case. All of those cases either use, or cite cases using, an illustration taken from an article in 3 Stanford Law Review, Freeways, p. 308:

"As a final case, consider the situation where the right-of-way purchased runs right through B's land. In the case of a normal, unrestricted-access highway, B will be paid for the land actually taken and also 'severance' damage for the separation of the property. If the highway is to be of limited-access design, with B having no right of access, *the severance of the two parcels will be more complete. B should be, and is, paid for this more complete severance, but this is on the basis of severance damage alone* and not on any theory of right of access being denied." [Emphasis supplied.]

Most of those jurisdictions following this reasoning have statutory provisions relating to severance damages. In California, the Code of Civil Procedure, § 1248, requires the court, jury or referee to ascertain and assess severance damages, stating: "If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff;."

It can be readily seen that while they will not allow damages for denial of right of access, still they recognize that the severance of the landowner's remaining parcels will be "more complete" and he should be paid more damages for "this more complete severance."

The result reached by us is the same, although by different reasoning. If a conventional four lane access highway is built through the property, the remaining land has one value; if a four lane non-access highway is built, the remaining land has a lesser value, because the abutting landowner has no frontage, cannot cross the highway from one tract to the other and must use a circuitous route to go from one tract to another, where formerly the tract was not divided. Under the law in this state, these differences in value are to be considered in arriving at the total difference in the value of the property before and after the taking.

In view of our constitutional provisions, statutes and decisions, we hold that where, as here, the property right of access is condemned and the abutting property owner is denied access to the controlled or limited· access highway, this factor or circumstance is proper for the jury to consider in arriving at just compensation to be awarded the owner of the land.

The dissenting opinion cites Southern Electric Generating Co. v. Lance, 269 Ala. 25, 110 So.2d 627; Southern Electric Generating Co. v. Leibacher, 269 Ala. 9, 110 So.2d 308, and Housing Authority of Birmingham Dist. v. Title Guarantee Loan & Trust Co., 243 Ala. 157, 8 So.2d 835. Those cases are not apt authority on the question before us. In each case, the condemnation of the property was for a purpose other than for a public highway. Title 19, § 14, Code 1940, clearly states that the compensation must not be reduced or diminished because of any benefits "to their remaining lands in consequence of the uses to which the lands to be taken, * * * will be appropriated;", but the same section provides a different rule where lands are condemned for public highways, as previously quoted in this opinion.

There was no error in permitting the jury to consider the fact that appellee had no right of access to the highway running through his property.

Assignment of error 2 charges error in the refusal to grant appellant's motion for a mistrial when counsel for appellee asked the following question on cross-examination of appellant's witness Bryson, a right-of-way engineer: "Do you know of a single instance where a jury in this county has failed to go above his (the state appraiser's) valuation?"

The objection to this question was sustained. We think the trial court properly overruled the motion for a mistrial. Appellant received no prejudicial injury, especially in view of the fact that his counsel managed to get in the statement that there was such an instance, the case of the Martin Estate, which was represented by appellee's attorney.

Assignment No. 3 charges error in overruling objections to the following question on cross-examination:

"Q. Mr. Bryson, of the 30% you say did not settle on the basis of any evaluation of Mr. Williamson, can you recall any case, other than the estate of R. A. Martin, where the jury verdict failed to exceed his valuation and the award of the Probate Court?"

After the objection, the court stated to objecting counsel: "Overruled. You went into it. * * * You asked him the percentage that settled" (for the valuation set by the state's appraiser, Williamson).

What percentage of other property owners had settled at the value set by Mr. Williamson (shown by appellant to have been 70%) was not relevant, but the rule is that irrelevant, incompetent or illegal evidence may be admitted to rebut evidence of like character. Bank of Phoenix City v. Taylor, 196 Ala. 665, 72 So. 264; 9 Ala. Dig., Evidence, ⬦155(5).

Assignments 4 and 5 are predicated on the denial of motion for a mistrial. While appellee was testifying, he was asked if he had a judgment as to the value of the remainder of the 80 acre tract after the taking of 12.62 acres. The answer: "You mean after they build a military highway to Arkansas, what's it worth?" The objection was sustained, and three times the court told the jury not to consider the answer. Two of these times occurred after counsel for appellant stated why he thought the answer was highly prejudicial.

We have held that a motion for a mistrial was properly overruled where the answer of the witness was, as here, irresponsive to a question calling for proper evidence, when the trial court instructed the jury not to consider the answer. Wagnon v. Patterson, 260 Ala. 297, 70 So.2d 244; Cannon v. Scarborough, 223 Ala. 674, 137

So. 900. Moreover, we assume that it is common knowledge that one of the basic reasons for the institution of the interstate limited access highway construction program was to provide rapid traffic facilities for defense purposes in case of national emergency. In Birmingham Electric Co. v. Perkins, 249 Ala. 426, 31 So.2d 640, 642, we said:

"We· are called upon, therefore, to determine whether or not these remarks were so erroneous and prejudicial that the same probably influenced the jury to the prejudice of the defendant. Mobile Light & R. Co. v. Gallasch, 210 Ala. 219, 97 So. 733. The trial court was present and was an eyewitness to all of the proceedings and in overruling the defendant's motions in effect found that the remarks were not prejudicial to the defendant. Therefore the action of the trial court in denying the motions for mistrial and in overruling the motions for new trials will not be disturbed by this court unless it affirmatively appears from the entire record that the statements involved were probably prejudicial to the defendant, either as to result or the amount of damages assessed. Mobile Light & R. Co. v. Gallasch, supra; Birmingham Electric Co. v. Mann, 226 Ala. 379, 147 So. 165."

We cannot say that the result or "the amount of damages assessed" was affected. Appellant's expert witness placed the damage at $1,450. Appellee and his expert witness placed the damages at $8,000. The jury awarded $4,000. This action does not indicate that the jury was prejudiced as to the amount of damages assessed.

Appellant's final assignment of error is concerned with counsel's argument to the jury. The assigned error is limited to the last two sentences of the statement copied below. But the record shows the statement consists of four sentences, as follows: "Now Mr. Starnes (who opened for appellant) said that this money for this compensation comes out of the taxpayers pocket. And I would like to comment on that. At the rate that the evidence has shown that that compensation is paid to this gentleman whose only day in Court is now, there are two and a half million people in the State of Alabama. It will cost you one/tenth of one cent to pay him $25,000."

We have held that an appeal to the self-interest of the jurors as taxpayers is of such a prejudicial nature that it constitutes a ground for reversal. Williams v. City of Anniston, 257 Ala. 191, 58 So.2d 115. The entire statement made here shows on its face that it was reply in kind to improper argument first made by counsel for appellant. Replies in kind do not amount to reversible error. McLaney v. Turner, 267 Ala. 588, 104 So.2d 315; Alabama Power Co. v. Bowers, 252 Ala. 49, 39 So.2d 402. Statements or argument of counsel which are provoked or produced by statements or arguments of opposing counsel can furnish no ground for complaint or corrective action. Harvey Ragland Co. v. Newton, 268 Ala. 192, 105 So. 2d 110; Alabama Great Southern R. Co. v. Gambrell, 262 Ala. 290, 78 So.2d 619.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.

SIMPSON and STAKELY, JJ., dissent, except as to assignments of error 2, 3, 4 and 5.

SIMPSON, Justice, with whom STAKELY, Justice, concurs (dissenting).

· This is an appeal from the Circuit Court of St. Clair County, Alabama, from a jury verdict and judgment thereon awarding appellee $4,000 as damages in a condemnation suit, instituted .by St. Clair County to acquire land for a public highway.

The subject property.was not served by any road and the proposed road is a limited access highway. The principle question to be determined is whether the trial court erred to a reversal in refusing cer-

tain charges requested by the appellant to the effect that no damages could be awarded to the landowner in restricting or limiting right of access to the new highway. Rulings on evidence raise the same point.

The requested charges of the appellant which were refused by the trial court, numbered two through eight, will be considered and are determinative of the appeal. In essence these charges enunciated the principle that where a new limited access highway is constructed on a new right of way, no access rights previously existing in the landowner, no access rights have been taken away. In other words, the condemnor asked that the jury be instructed that an abutter is not entitled to any damages or compensation for restriction or limitation of access to the proposed road since no access previously existed and no access is being taken away. I think these charges should have been given.

The question is new to this jurisdiction but as I read the cases from other jurisdictions they are practically unanimous in supporting the proposition sought to be enunciated by the stated charges.

In State v. Calkins, 50 Wash.2d 716, 314 P.2d 449, 450, an eminent domain proceeding by the state to condemn a right of way across premises of defendant for purpose of constructing a new limited access highway where no highway theretofore existed, was presented.

The court stated:

"* * * where a new limited-access highway is established by condemnation in an area where no highway previously existed, there is no taking of an easement of access, because such an easement has never in fact existed.

* * * * * *

"Thus, since the property owner has no easement, i. e., no right of access to the highway itself, it follows that an allowance of damages for the loss of such a nonexistent easement or right of access is unrealistic, unjustified in fact, and improper."

Repeating the same principle the Supreme Court of Idaho in State ex rel. Rich v. Fonburg, 80 Idaho 269, 328 P.2d 60, 64, where the Highway Department brought condemnation proceedings to condemn part of a farm for highway purposes, said:

"Nor is the condemnee entitled to damages because he is not granted unrestricted access to the new part of the road being constructed. There is no inherent right of access to a newly relocated highway. The new highway not being in existence prior to the present construction, the landowner would suffer no compensable damages because his access to the new construction was denied him. The condemnee never having had access to the new highway there is no easement or access taken in the proceeding. There can only be compensable damages for an existing easement, and when one does not exist, there is none to take."

The Supreme Court of Oregon in State, By and Through State Highway Commission v. Burk et al., 200 Or. 211, 265 P.2d 783, 793, held similarly and in its opinion quoted with approval from People v. Thomas, 108 Cal.App.2d 832, 239 P.2d 914, where proceedings were instituted for acquisition of a limited access freeway where no highway had previously existed, as follows:

"'The evidence shows no highway existed in the location of Parcel 4 prior to construction of the freeway and it is apparent that appellants never had an existing easement of access to state highway * * * or any other highway and since no property right was acquired, they have no supportable claim for damages.'"

And from City of Los Angeles v. Geiger, 94 Cal.App.2d 180, 210 P.2d 717, 724:

" 'There can be no detriment to a right which never existed and no compensation for a loss not sustained. * * *' "

The Court then quoted from an article in 3 Stanford Law Review, Freeways, p. 308, which the Supreme Court of Oregon noted "merits consideration by reason of the excellence of its reasoning":

" 'As a final case, consider the situation where the right-of-way purchased runs right through B's land. In the case of a normal, unrestricted-access highway, B will be paid for land actually taken and also "severance" damages for the separation of the property. If the highway is to be a limited-access design, with B having no right of access, the severance of the two parcels will be more complete. B should be, and is, paid for this more complete severance, but this is on the basis of severance damage alone and not on any theory of right of access being denied.' "

In State ex rel. State Highway Commission v. Clevenger, 365 Mo. 970, 291 S.W.2d 57, involving condemnation proceedings to acquire lands for relocation of a highway as a limited access highway, the Supreme Court approved the reasoning expressed in State, By and Through State Highway Commission v. Burk, supra; that there could be no taking of an easement of access to the new roadway, because no prior right of access existed. Thus, the supposed deprivation of a right of access to the road itself could not constitute a compensable element of damage.

The same principle was enunciated in the City of Santa Monica in the case of Schnider, et ux. v. State, 38 Cal.2d 439, 241 P.2d 1, 3, 43 A.L.R.2d 1068, where the trial court refused to allow plaintiff compensation for the loss of an asserted right of direct access. The court in its opinion concluded:

"Where a property owner has no right of direct access to a highway before it is converted into a freeway abutting upon his property, nothing is taken from him by the failure to give him such a right when the conversion takes place. The allowance of compensation in such a case would amount to a gift rather than payment for the destruction of a right."

See also the case of Department of Public Works and Buildings v. Hubbard, 363 Ill. 99, 1 N.E.2d 383.

Thus is the rule announced in the foregoing cases: A property owner without prior highway access is not entitled to compensation for deprivation of access in the construction of a new limited access highway on a newly acquired right of way. Therefore, on the soundness of the principle that "there can be no compensation for a loss not sustained" it is clear to me that the learned trial court erred in refusing to give the appellant's requested written charges which sought to charge out as an element of damages to be considered by the jury the denial of a right of access.

I do not read any of our cases, such as Blount County v. McPherson, 268 Ala. 133, 105 So.2d 117, and Blount County v. Campbell, 268 Ala. 548, 109 So.2d 678, to have enunciated a contrary principle. These cases presented different factual situations from the one at bar.

In the McPherson case the Court pointed out:

"This highway runs along the course of the 'old' highway, U. S. No. 31. Previously appellee could go directly from his property to U. S. 31 and he had considerable frontage on it. He has no frontage on the new access controlled route, and he could get to it or the old highway only by means of 'service' roads." [268 Ala. 133, 105 So.2d 118].

The petition for condemnation also sought to condemn this existing right of access to the highway. It was, therefore, very cor-

rectly held that this valuable property right should form an element of damages to the landowner's property. See 43 A.L.R.2d § 3, p. 1074 for supportive authorities.

In the Campbell case the following are the facts (quoted from the opinion):

> "The new proposed highway for which the appellee's land was taken replaces [old] U. S. Highway 31 at the point where the land was taken. * * There were two roads passing through the appellee's land which furnished two routes of indirect access to Highway 31. One of these roads was to be closed due to the taking of access rights along the new road. As to the other road, in order for respondent to go to Hanceville, which is north of respondent's farm, he would have to travel 3½ miles more by the new road than he has to travel by the old Highway 31." [268 Ala. 548, 109 So.2d 680].

The court held that loss to appellant of such "indirect access" was compensable in the condemnation proceedings. The cases also support this proposition. See 43 A.L.R.2d § 4, p. 1077.

But in the situation instantly presented, where the condemned property did not abut on any highway prior to construction and the landowner had no preexisting right of access, no damages could be claimed because after construction the owner was not provided with access to the new highway. As, of course, you should not be paid for a right you never had. There seems to be no contrariety of opinion on this question in any of the cases so far decided. And the sound reasoning of the above mentioned cases (and there are many others) impresses me as being unassailable. See 43 A.L.R.2d § 6, p. 1079 as supportive of this theory.

The majority opinion, for apparently two main reasons, holds that a landowner should be compensated for loss of access to a highway even though no such access existed before the highway construction. The first reason seems to be based upon the theory

that the Alabama Constitution and Statutes are different from those in the states from which the cases cited in my opinion are taken. The majority opinion indicates that, therefore, these cases do not serve as valid authority in Alabama. I disagree. Section 235 of the Alabama Constitution of 1901 states that no private property shall be taken, injured or destroyed for a public purpose without just compensation being first paid therefor.

The California case of Schnider v. State, 38 Cal.2d 439, 241 P.2d 1, 43 A.L.R.2d 1068, refers to a similar provision, viz.: Article 1, Section 14 of the Constitution of California, which reads in pertinent part as follows:

> "Private property shall not be taken or damaged for public use without just compensation having first been made * * *."

The Schnider case, supra, in language relevant to the instant case, declares the law in California to be as follows [38 Cal. 2d 439, 241 P.2d 3]:

> "The Streets and Highways Code furnishes ample authorization for the construction of a freeway on land where no public way existed before without creating rights of direct access in favor of other property which, prior to the new construction, had no such rights of access. Sts. & Hy.Code, §§ 100.1, 100.2, 100.3. The provision of section 100.3 that a declaration creating a freeway 'shall not affect private property rights of access, and any such rights taken or damaged within the meaning of Article I, section 14, of the State Constitution * * * shall be acquired in a manner provided by law', *plainly refers to rights of access which exist prior to the establishment of the freeway and not to claimed rights which have had no previous existence and which could come into being,* if at all, only by virtue of the new construction.
>
> "Where a property owner has no right of direct access to a highway be-

fore it is converted into a freeway abutting upon his property, nothing is taken from him by the failure to give him such a right when the conversion takes place. The allowance of compensation in such a case would amount to a gift rather than payment for the destruction of a right. Some analogy may be afforded by cases holding that a property owner has no right to compensation on the basis of enhancement of value resulting from the proposed public improvement for which the property is taken or damaged. See United States v. Miller, 317 U.S. 369, 377–380, 63 S.Ct. 276, 87 L.Ed. 336; San Diego Land & Town Co. v. Neale, 78 Cal. 63, 74, 20 P. 372, 3 L.R.A. 83."

(It is noted here that California allows enhancement to be deducted from damages.) People, By and Through Department of Public Works v. Thompson, 43 Cal.2d 13, 271 P.2d 507.

The Alabama Constitution also clearly refers to the taking or the damaging of a property right *which was in existence at the time of the taking.* Section 235, supra.

Courts throughout the United States have logically held, that where a new highway is constructed as a limited access facility, no right of access arises in the abutting owner. For other cases not cited supra, see also Carazalla v. State, 269 Wis. 593, 70 N.W.2d 208, 71 N.W.2d 276; Lehman v. Iowa State Highway Commission, Iowa 1959, 99 N.W. 2d 404; Medearis v. State, Okl.1959, 341 P.2d 607; Smick v. Commonwealth, Ky. 1954, 268 S.W.2d 424.

The principle of restricted dedications has long been known to the common law. Home Laundry Co. v. City of Louisville, 168 Ky. 499, 182 S.W. 645. The limited access highway would seem to be but a modern application of this doctrine. Any other rule would result in the Highway Department having to condemn a right which was created by their own action. Such a result is not a logical one, nor would it be fair and equitable to the condemning authority.

The majority opinion argues that since enhancement resulting after the taking may be set off against damages, then loss of access resulting after the highway is opened for traffic should be added to damages. This reasoning impresses me as falacious and is not consistent with previous holdings of this Court. Alabama strictly follows the before and after rule in determining the valuation of property in arriving at the compensation to which an owner is entitled in eminent domain proceedings. Morgan County v. Griffith, 257 Ala. 401, 59 So.2d 804; Rountree Farm Co. v. Morgan County, 249 Ala. 472, 31 So.2d 346; Coffee County v. Spurlin, 245 Ala. 99, 16 So.2d 12; Bates v. Chilton County, 244 Ala. 297, 13 So.2d 186; Pickens County v. Jordan, 239 Ala. 589, 196 So. 121; Conecuh County v. Carter, 220 Ala. 668, 126 So. 132; Rudder v. Limestone County, 220 Ala. 485, 125 So. 670, 68 A.L.R. 776.

We have consistently held that the landowner is entitled to the difference, if any, between the value of his property before the taking and the value of his property after the taking. If no access exists immediately before the taking, then, clearly, loss of access could not affect the difference between the before and after values. This is readily distinguished from enhancement since in order to deduct enhancement from damages, the land must, in some respect, be worth more after the taking than it was before. Thus, enhancement does actually affect the difference between the before and after values.

To allow a landowner to be compensated for loss of access when he did not have access before the highway was constructed would be to permit the landowner to recover for enhancement which was created by the highway itself. This Court has consistently followed the vast majority of cases throughout the United States in holding that a landowner must not be compensated for an increased value which is created by the proposed improvement.

**336**

In our recent case of Southern Electric Generating Co. v. Lance, 1959, 269 Ala. 25, 110 So.2d 627, 633, we hold:

"We further observe that the trial court correctly gave five written charges requested by appellant to the effect that Lance [landowner] was not entitled to any increased value for his land on account of the proposed improvements * * *."

In Southern Electric Generating Co. v. Leibacher, 269 Ala. 9, 110 So.2d 308, 318, this Court further observed, *"An owner is not entitled to show the valuation of the property as enhanced by the contemplated improvement."*

In Housing Authority of Birmingham Dist. v. Title Guarantee Loan & Trust Co., 243 Ala. 157, 8 So.2d 835, 838, this Court declared:

"Nor does it require any argument or citation of authority to demonstrate the *inadmissibility* of testimony tending to show the valuation of the property as enhanced by the contemplated improvement * * *." (Emphasis added.)

See also United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; State of Texas v. Vaughan, Tex.Civ. App., 319 S.W.2d 349; United States v. First National Bank, D.C.Ala., 250 F. 299; Cole v. Boston Edison Co., 338 Mass. 661, 157 N.E.2d 209.

Clearly, a landowner should not be entitled to an increased award if his property is located at an interchange of a limited access facility and thereby changing the highest and best use of the property from farm land to commercial property. Similarly, a condemnor should not have to pay for access when such access is in fact created by the highway itself.

Of course the severance may be more complete when a highway is a limited access facility. This damage is properly reflected, however, in the before and after valuations of the whole property and the owner should not be compensated for loss of access per se where no such access existed prior to the highway. He should not be paid for a right he never had nor for a loss he never sustained. Lehman v. Iowa State Highway Commission, Iowa 1959, 99 N.W.2d 404; 3 Stanford Law Review, p. 308.

I, therefore, respectfully dissent.

STAKELY, J., concurs.