266 So.2d 797

**Tommy William SANDERS, alias**

v.

**STATE.**

**6 Div. 82.**

Court of Criminal Appeals of Alabama.

Feb. 8, 1972.

Rehearing Denied March 7, 1972.

**590**

Parker, Wilkinson & Montgomery, William T. Kominos, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

## PER CURIAM.

The appellant appeals from a conviction by the Circuit Court of Jefferson County of robbery with a sentence of ten years imprisonment.

On the night of March 14, 1969, Smith T. Murphy was driving his automobile at the intersection of Avenue F. and 5th Way in Birmingham when something struck his automobile as it was passing through the intersection. He immediately stopped, got out of his car and was confronted by Jasper Hall and Melvin Pye. After a few words between the parties, it appears that Hall and Pye grabbed Murphy, overpowered him and stabbed him several times as he was wrestled to the ground. At the time, one of the two took from Murphy's pocket his billfold containing a five dollar bill, along with some personal papers. During the stabbing, or just afterwards, under some tendencies of the testimony, appellant ran up to the parties above mentioned and sat on the feet of Murphy shortly before the billfold was taken, but Murphy did not see appellant at all. Afterwards Hall and Pye left the scene down a side street. However, before leaving it appears that Hall attacked one of the State's witnesses who had witnessed the entire incident and had run up on the porch of a residence nearby to have someone call for assistance.

At the time of the encounter, State's witnesses Watson Brown and Charles James Jones walked up to the opposite side of the street where the difficulty was taking place and saw the appellant at the scene of the encounter. Immediately after Hall and Pye had left the scene with the billfold of the victim, the appellant raised Murphy up and attempted to find out whether he was conscious or not. The appellant stayed around the scene of the difficulty for a few minutes before he and the other witnesses left.

The appellant admitted his presence at the scene of the difficulty but insisted that he went up to the parties with the intention of assisting Murphy and he had no part in the robbery; that he knew nothing of it beforehand and received none of the proceeds; but that he was merely an onlooker who attempted to do what he could to stop Hall and Pye in their attack upon Murphy. He did not try to hold Murphy down. He claimed he did not try to stop Hall from attacking State's witness Watson after Watson had gone up on the porch of the nearby house to call for the police. This is an outline of the evidence.

At the conclusion of the State's testimony the appellant made a motion to exclude the evidence, which motion was overruled.

After the verdict of the jury, appellant also filed a motion for a new trial, which was also overruled by the court.

From the facts above set out, a jury question was presented.

The appellant, in brief, strenuously argues that the court committed reversible error in allowing the State's witness Charles James Jones to testify over the objection of the appellant that the witness thought the appellant was attempting to help Jasper Hall and Melvin Pye take the money from the victim. In support of this contention the appellant insists that the witness could not testify as to what he thought and understood another person was doing,

since it is violative of the opinion rule as being an attempt to determine the intent or purpose of another person, which is for the jury, after considering the facts. This is a correct statement of the law and is supported by many cases from the appellate courts of Alabama, including the following: Stewart v. State, 27 Ala.App. 315, 172 So. 675; Prince v. State, 215 Ala. 276, 110 So. 407; Deloney v. State, 225 Ala. 65, 142 So. 432; and Hembree v. State, 20 Ala. App. 181, 101 So. 221.

The following excerpts from the transcript indicate the questions and answers on re-direct examination of State's witness Charles James Jones involving this question:

"Q. Well, he wasn't trying to do anything to get Jasper Hall and Melvin Pye off of Mr. Murphy, was he?

"A. No, sir.

"Q. He was trying to help them out, is that right?

"MR. CONWAY: We object to that. This is leading and suggestive. This lawyer has been testifying all through this case.

.    .    .    .    .    .

"THE COURT: I do sustain your objection to that, it was a leading question.

"Now I am not trying to dissuade you from the subject matter, but if you will just ask a question and put it as a question I will let you question him.

"Q. (BY MR. BATCHELER:) I want to ask you whether or not it appeared to you that Tommy Sanders was helping Jasper Hall and Melvin Pye take the money away from this man?

"MR. CONWAY: I object to that, if the court please.

.    .    .    .    .    .

"Q. (BY MR. BATCHELER:) I am asking you whether or not it appeared that Tommy William Sanders was help-

ing Jasper Hall and Melvin Pye to take this money away from the victim, Smith Murphy?

"A. Well, he couldn't do that when Tommy Sanders was on his legs, on his ankles, and that is how Jasper Hall got the wallet out of his pocket.

"THE COURT: Your answer doesn't respond to the question, I don't understand, go ahead, again.

"Q. (BY MR. BATCHELER:) All right. Are you saying that he was helping or was not helping?

"A. He was helping them.

"Q. He was helping them?

"A. Yes, sir.

"Q. That is the way it appeared to you, as you saw it, is that right?

"THE COURT: He was helping who?

"THE WITNESS: Helping Jasper Hall and Melvin Pye."

However, on cross-examination of Charles James Jones by the appellant, the following appears:

"Q. (BY MR. CONWAY:) Tommy Sanders was trying to help Mr. Murphy, wasn't he?"

OBJECTION BY DISTRICT ATTORNEY

OVERRULED.

"A. Huh?

"Q. Tommy Sanders was trying to help Mr. Murphy, wasn't he?

"A. When he got off his legs he was holding his head up looking at him to see if he was dead."

Still further, on cross-examination of Jones by the appellant:

"Q. Now, what actually happened is that Sanders was trying to help Mr. Murphy, wasn't he?

"A. Yes, sir, It looked like it.

"Q. It looked like Sanders was trying to help Mr. Murphy, is that what you are telling this jury?

"A. Yes, sir."

The rule with regard to opinion testimony above referred to no longer applies in a case where the illegal evidence complained of is offered to rebut illegal evidence offered by the adversary, whether objected to or not.

The testimony quoted above shows clearly that the question of the intent of appellant in his actions during the difficulty was first testified to and brought out on cross-examination by the appellant and that the testimony objected to by the appellant was clearly in rebuttal of that first brought out by appellant.

■ It has been held many times that irrelevant, incompetent or illegal testimony may be admitted to rebut illegal testimony even though it was not objected to. Cunningham v. Lowery, 45 Ala.App. 700, 236 So.2d 709; St. Clair County v. Bukacek, 272 Ala. 323, 131 So.2d 683. See also The Law of Evidence in Alabama by Judge McElroy, Vol. 1, § 14–01, on page 13 where many cases enunciating this principle are set out.

■ Therefore, the action of the appellant in first bringing in illegal and inadmissible testimony has the legal effect of cutting him off from objecting to a rebuttal of that testimony by the State.

While appellant was on the witness stand during cross-examination he was asked by the district attorney if he had been arrested for breach of the peace by assault and was allowed to answer over the objection that he had been. The appellant insists that therein the court committed error under the general rule obtaining in Alabama that evidence of a distinct and different offense is not admissible in the trial of a person accused of an offense. Brasher v. State, 249 Ala. 96, 30 So.2d 31.

The court recognizes this to be the law but upon an examination of the record in this case it appears that the appellant's counsel, on direct examination, asked the following question, "Have you ever been in trouble before?", and received the answer, "no, sir." The testimony of the former arrest of the appellant was properly allowed by the court on rebuttal to the testimony of appellant that he had never been in trouble before.

Some of the authorities cited in the proposition first dealt with above are appropriate here and in addition thereto the following cases allude to the principle that curative evidence is admissible in rebuttal to illegal evidence of a harmful nature: Vincent v. State, 231 Ala. 657, 165 So. 844; Blakey v. Blakey, 33 Ala. 611; Johnson v. State, 265 Ala. 360, 91 So.2d 476; and Craven v. State, 22 Ala.App. 39, 111 So. 767. Furthermore, it appears that the objection to this question came too late, since it was after the witness had answered the question.

The court refused eight charges requested in writing by the appellant.

Charges 1 and A—4 were affirmative in nature and were properly refused.

Other charges which were properly refused were A, which was covered by the oral charge of the court; E, which was argumentive and was covered by the given and oral charge of the court; H, in which the principle of law was not properly stated and was coupled with an affirmative direction to the jury; and 102, which was abstract and invasive of the province of the jury.

Charge 101 reads as follows:

"The Court charges the jury that if you believe from the evidence in this case that witness Murphy testified before the Grand Jury that the money taken from him was a five dollar bill which is a material averment of the indictment, and such fact was known to the Grand Jury, then the averment of the indictment, 'a more particular description and denomination of which is to the Grand Jury otherwise unknown' is not true and renders the indictment defective, and will not support a conviction, and you should find the defendant not guilty."

This charge attempts to state a correct principle of law as is stated in Charge I, except the indictment was not rendered defective by the phrase, "a more particular description and denomination of which is to the Grand Jury otherwise unknown." There was no error in the court's refusal to give this charge.

Charge I, above referred to, which was refused by the court reads as follows:

"The Court instructs the jury that if you believe the evidence in this case that Smith Thomas Murphy testified before the Grand Jury that the money consisted of one Five ($5.00) Dollar Bill, then such denomination of the United States Currency was known to the Grand Jury and after considering all the evidence in the case, you believe this to be true, then the Indictment returned by the Grand Jury will not sustain a conviction and your verdict should be 'not guilty.'"

In this case, the State's witness Murphy, the alleged victim of the robbery, testified first on cross-examination that he told the Grand Jury he was robbed of a five dollar bill and later when recalled on direct examination he testified that he told the Grand Jury it was five dollars. Therefore, a question of fact was presented as to whether the Grand Jury knew the exact denomination of the bill or bills alleged to have been taken from Murphy.

The indictment in this case contains the allegations, "Tommy William Sanders, alias Tommy William Sanders, Jr., feloniously took Five Dollars of the lawful currency of the United States of America, a more particular description of which is to the Grand Jury otherwise unknown . . . ."

In the case of Young v. State, 20 Ala. App. 219, 101 So. 469, this court said:

"It is a recognized rule of law that, where an indictment alleges the description of money as being unknown, to the grand jury, a conviction cannot be sustained, where the proof shows that the description was in fact known to the grand jury. This would be a variance entitling defendant to an acquittal under such indictment. James v. State, 115 Ala. 83, 22 South. 565. . . ."

This principle has been recognized by this Court in the recent case of DeFranze v. State, 46 Ala.App. 283, 241 So.2d 125. *De-Franze* cites further authority on this question.

The testimony of the State's witness was the only testimony with regard to whether or not the grand jury knew the denomination of currency allegedly taken from the State's witness Murphy.

■ Under the testimony of Murphy the question of whether the Grand Jury knew the particular description of the currency being a question of fact, the question of whether there was a variance between the allegation of the indictment and proof was a question of fact and it was error for the court to refuse Charge I.

The question of a variance in the case at bar could not be properly raised by a motion to exclude the evidence or the affirmative charge.

For the error indicated in the refusal of the court to give Charge I for the appellant, the judgment in this cause is reversed and the cause remanded.

The foregoing opinion was prepared by W. J. Haralson, Supernumerary Circuit Judge, and adopted by this Court as its opinion.

Reversed and remanded.

PRICE, P. J., and CATES, ALMON and TYSON, JJ., concur.