[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 584 
This is an appeal from judgments rendered against appellants in the Circuit Court of Morgan County. The cases on which this appeal is taken resulted from an alleged shoplifting incident at the Kroger supermarket in Decatur, Alabama.
Briefly, the following sequence of events transpired. On march 18, 1975 the appellees, Mrs. Hazel Harton and her mother, Mrs. Lola Puckett, went grocery shopping at appellants' store. While in the store, the women's actions caused a Kroger employee, appellant Frankie Seamons, to suspect that Mrs. Harton and Mrs. Puckett were engaged in the process of shoplifting various items. As Mrs. Harton and Mrs. Puckett left the store to return to their automobile, Seamons confronted them with his suspicions and demanded that they show him the contents of their pocketbooks. Both women ignored Seamons' demands, whereupon he followed them to their car. At appellees' automobile, Seamons' demands to examine the contents of Mrs. Harton's and Mrs. Puckett's pocketbooks were again refused. As a result of this refusal an altercation occurred in which Seamons grabbed and scuffled with both women in an effort to obtain their pocketbooks. When his efforts to search the pocketbooks were unsuccessful, Seamons returned to the Kroger store and called the police.
Shortly after appellees returned to their home they were confronted by police officers who searched the women's automobile. This search did not reveal any stolen items. Nonetheless, on the following day Mrs. Harton and Mrs. Puckett were called to the Decatur police station where they were arrested and booked on the charge of petty larceny. The women were subsequently tried and found guilty of petty larceny by the Decatur City Recorder. Appellees appealed this conviction to the Morgan County Court. A trial de novo was demanded by the appellees and a jury was impanelled to hear their case.
At the close of the prosecution's case-in-chief, appellees' attorney made a motion to exclude the prosecution's evidence on the ground that there was a fatal variance between the information on which the appellees were tried and the proof presented by the prosecution at the trial. This variance was the result of an inconsistency between the information against appellees which alleged that the stolen property belonged to "The Kroger Company, a corporation" and testimony at trial which demonstrated that the property belonged to "The Kroger Co., Inc." or to "The Kroger Company." Because of this variance, the trial court granted appellees' motion and the jury was dismissed without deciding the merits of the case.
As a consequence of the aforementioned events, appellees brought separate civil actions against the appellants. Both Mrs. Harton's and Mrs. Puckett's complaint contained two counts. Under count one each woman claimed that appellant Seamons, as an employee of Kroger, had committed an assault and battery against them. Under count two both women alleged that appellant Kroger and its employee Seamons had maliciously prosecuted them for petty larceny. *Page 585 
The two actions were consolidated for trial and the case was tried before a jury in the Morgan County Circuit Court.
At the close of the evidentiary phase of the trial, appellants' attorney made a motion for a directed verdict. This motion sought to prevent the jury from considering the count for malicious prosecution. The trial court denied this motion and the case went to the jury on the count for assault and battery and the count for malicious prosecution. After consideration of both counts the jury rendered a general verdict on behalf of each appellee in the amount of $2,000. From these verdicts Kroger and Seamons appeal.
On appeal, appellants urge that the trial court improperly denied their motion for a directed verdict. Appellants claim that the trial court's ruling on their motion was in error for two reasons. First, appellants contend that in order to bring a civil action for malicious prosecution, the criminal proceeding upon which the malicious prosecution action is based must have terminated in such a manner as to indicate the innocence of the accused. In this respect, appellants argue that the criminal proceeding upon which appellees' suit for malicious prosecution was founded ended as the result of a technicality rather than as the consequence of a finding by the trier of fact that the accused persons were innocent. Second, appellants urge that where the plaintiffs (appellees) in a malicious prosecution action have testified that they were "acquitted" of an earlier criminal charge against them thereby suggesting that such charge has been considered on its merits and found deficient, it is error for the trial court to have excluded defense (appellants') evidence as to the actual manner in which the criminal proceeding has been disposed of.
Appellants' first contention is based on the proposition that the termination of the criminal proceeding against appellees was not sufficient to permit their action for malicious prosecution. The case of Johnston v. Duke, 284 Ala. 359,224 So.2d 906, set out the elements necessary to maintain a suit for malicious prosecution in this jurisdiction. The elements required for such an action are: (1) institution or continuation of an original judicial proceeding, either civil or criminal; (2) by or at the instance of the defendant; (3) termination of such proceeding in the plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) injury or damage as the result of the prosecution's complaint. See S.S. Kresge Co. v.Ruby, Ala., 348 So.2d 484.
It is with respect to the third of the above listed elements that appellants claim error. Appellants urge that the granting of a motion to exclude the prosecution's evidence at the close of its case-in-chief in a criminal proceeding on the ground that there was a fatal variance between proof at trial and the information against the accused women does not constitute a termination in favor of the accused since the proceeding ended without an indication of the guilt or innocence of appellees. We disagree.
A number of courts in other jurisdictions have taken the view that the criminal proceeding against the accused must have terminated in a manner consistent with the innocence of the accused rather than on the basis of a procedural or technical defect. Oppenheimer v. Tamblyn, 167 Cal.App.2d 158,334 P.2d 152; Jaffe v. Stone, 18 Cal.2d 146, 114 P.2d 335; Siegel v.City of Chicago, 127 Ill. App.2d 84, 261 N.E.2d 802. SeeRestatement (Second) Torts, § 663 and comment d. But this is not the rule in Alabama.
To subject a person to liability for malicious prosecution in Alabama, the criminal proceeding on which such action is based must have terminated in favor of the accused. S.S. Kresge Co.v. Ruby, supra. In order that there may be sufficient termination in favor of the accused it is not necessary that the proceeding should have gone so far as to preclude further prosecution on the ground of double jeopardy. Restatement(Second) of Torts, § 659, comment b.; 52 Am.Jur.2d MaliciousProsecution, § 37. It is enough that the proceeding *Page 586 
is terminated in such a manner that it cannot be revived and the prosecutor, if he proceeds further, will be put to a new prosecution. Southern Car Foundry Co. v. Adams, 131 Ala. 147,32 So. 503; Birmingham Bottling Co. v. Morris, 193 Ala. 627,69 So. 85. This is true, for example, of a discharge by a magistrate at a preliminary hearing because the evidence produced against the accused is not sufficient to warrant his being held for further proceedings to determine his guilt or innocence; the refusal of a grand jury to indict; the formal abandonment of the criminal proceeding by a public prosecutor by an entry of a nolle prosequi; the quashing of an indictment or information by a person of proper authority; or a final order by a trial or appellate court which precludes the bringing of further proceedings against the accused in the particular matter before the court. Restatement (Second) ofTorts, § 659, and comments thereto.
Moreover, this rule would seem to encompass any situation where the criminal proceeding against the party is dismissed from court, and thereby terminated so far as that particular prosecution is concerned. See Roughton v. Jackson, 37 Ala. App. 17, 64 So.2d 112. Furthermore, the rule permitting a malicious prosecution action if there has been a termination of the particular prosecution against the accused is applicable even in situations where the discharge by the magistrate, or withdrawal by the prosecution, would not preclude future criminal proceedings against the accused on the same charge.[1]Stewart v. Blair, 171 Ala. 147, 54 So. 506.
In Stewart v. Blair, supra, the plaintiff in the malicious prosecution suit had been discharged of the earlier proceedings against him by a committing magistrate. The defendant in the malicious prosecution suit claimed that only a showing by the plaintiff that the grand jury had refused to indict him would constitute a sufficient termination in favor of the accused. Our supreme court rejected defendant's contention and held that the discharge by the magistrate, even though he was only a committing magistrate, was a termination of the particular prosecution against the accused and thereby enabled the latter to bring his civil action for malicious prosecution.
In Sandlin v. Anders, 187 Ala. 473, 65 So. 376, a magistrate misconceived the nature of the prosecution against the accused and thus labeled it incorrectly so that it was mistakenly sent to the trial court instead of the grand jury. Later, during the course of the prosecution, the court to which the case was improperly sent struck the case from the docket. On the basis of these facts our supreme court held that the order striking the case from the docket was a sufficient end to the prosecution of the accused to permit his action for malicious prosecution.
The rationale for the position taken in these cases with regard to the final termination question was discussed inSouthern Car Foundry v. Adams, supra. In Southern Car Foundry appellant contended that there was not a sufficient termination in favor of the accused to permit the latter's suit for malicious prosecution. Appellant's claim was based on the fact that the accused had been discharged due to a nolleprosequi rather than by a determination of his guilt or innocence. Our supreme court in rejecting appellant's contention stated:
 ". . . If it be true that the plaintiff must, in order to sustain this suit, aver and prove that the prosecution against him had been `judicially investigated,' in the sense, that the charge preferred against him had been regularly tried by and before the arresting magistrate, and plaintiff, as the result thereof, had been acquitted and discharged, it is manifest, he could not maintain his action for malicious prosecution, although he may have been damaged as much in such case, as if he had been tried and acquitted. . . . *Page 587 
He would be left, therefore, remediless for what might have been a very great and improper violation of his personal rights. Such a result is not compatible with the law, which professes to furnish a remedy for every wrong. . . ."
In the present case the accused persons were initially found guilty of the criminal charge. However, they obtained a new trial and at that trial the prosecution was terminated on the basis of a procedural or technical defect. Nonetheless, the dismissal of the case against them terminated that particular proceeding in favor of the women. From the moment of that termination, that particular proceeding against the appellees could not have been revived. If the prosecutor had decided to proceed further, he would have been required to formulate an entirely new prosecution (albeit on the same charge). Thus appellees had a sufficient disposition of the former proceeding against them on which to base their malicious prosecution suit. The trial court did not err in denying appellants' motion for a directed verdict.
Appellants' second assignment of error is that the trial court refused to permit evidence by appellants which would have demonstrated that the discharge of appellees in the criminal proceeding was premised on a technicality rather than an actual acquittal as appellees testified in their action for malicious prosecution.
The facts with regard to this matter are as follows. At trial both Mrs. Harton and Mrs. Puckett were asked by their attorney on direct examination if they had been convicted of the petty larceny charge against them in recorder's court. Both answered in the affirmative. Next their attorney asked them about the ultimate disposition of their case on appeal to county court. Both replied that they had been acquitted. Appellants made no objection to this testimony. Appellants' attorney did, however, attempt on cross examination of the appellees to elicit the true manner in which the criminal charge against them had been disposed of. Likewise, upon presentation of appellants' case-in-chief their attorney sought to introduce oral testimony that the proceeding against appellees had been terminated as the result of a technical defect. On both occasions appellees' objection to such testimony was sustained by the trial court.
On appeal appellants contend that appellees' statements that they had been acquitted of the criminal charges against them created an erroneous impression in the jury's mind that appellees had been found innocent of the petty larceny charge brought against them by appellants. Appellants claim that the erroneous impression caused by Mrs. Harton and Mrs. Puckett induced the jury to believe that appellants lacked probable cause to prosecute the women. Thus, appellants maintain that they should have been permitted to introduce oral testimony, either on cross examination of appellees or through testimony of appellants' own witnesses, in order to demonstrate that the women were not acquitted, but rather, were released on a technicality. We cannot say from the record or the verdict rendered that appellants are correct in these assertions. We do, however, agree that the trial court erred in refusing to allow the introduction of appellants' oral testimony.
The best evidence of a judicial proceeding is the record itself, or a copy where copies are admissible or must be used as proof of such records. 29 Am.Jur.2d Evidence, § 480. See
Rule 44, ARCP. Similarly, testimony of a court ruling whether verbal, Medlin v. Platte County, 8 Mo. 235, or in writing,McElroy's Alabama Evidence, § 229.02(3) (3d ed. Samford Univ. 1977), is inadmissible since the record of the court is the best evidence of its official acts.[2] Moreover, our supreme court has taken the view that the court record is the "best evidence" *Page 588 
that a prior proceeding has terminated in favor of the party claiming malicious prosecution. Abingdon Mills v. Grogan,167 Ala. 146, 52 So. 596.
Thus the appellees' oral testimony of their "acquittal" was not proper to demonstrate the final termination of appellants' criminal action against them. However, since appellants' attorney made no objection to the failure of appellees to adhere to the best evidence rule, the evidence was properly admitted.
On the other hand, when appellants later sought to offer proof by oral testimony, rather than by court records, that appellees had not actually been acquitted of the petty larceny charge, appellees' attorney made a timely objection and the court refused to permit such testimony.
Although the court's exclusion of this evidence would have been proper under normal circumstances, it was, nevertheless, in error in this particular instance.
Where one party in the presentation of a case elicits inadmissible evidence from a witness, it is proper for the trial court, under the doctrine of curative admissibility, to permit the opposing party to offer his own inadmissible evidence in order to counterbalance the first party's evidence.See Sanders v. State, 48 Ala. App. 589, 266 So.2d 797, rev. onother grounds 289 Ala. 224, 266 So.2d 802 (recognizing the doctrine of curative admissibility). And Professor Gamble writing in the new revised edition of McElroy's AlabamaEvidence stated that:
 "Curative Admissibility is a doctrine which holds that if a party introduces illegal evidence, his opponent has the unconditional right to rebut such evidence with other illegal evidence. The rule is applicable even if the opponent failed to object to the original illegal or inadmissible evidence." Id.
at § 14.01.
Furthermore, in Manassa v. State, 47 Ala. App. 287,253 So.2d 356, our court of criminal appeals held that it was proper for the state to offer oral evidence that defendant had a police record where the defendant's lawyer first asked a question concerning the matter. Thus, when appellees' attorney introduced oral testimony about the result of a prior judicial proceeding in violation of the best evidence rule, appellants were entitled to rebut this testimony by oral testimony of their own.
Nonetheless, the trial court's failure to give operation to the doctrine of curative admissibility was not prejudicial to appellants. On appeal, the party claiming error must not only show error by the record, he must also establish that the injury affected his substantive rights. Roughton v. Jackson,supra. In the instant case there was no injury to appellants' substantive rights.
In view of the fact that the trial court was correct in denying appellants' motion for a directed verdict on the count for malicious prosecution for reasons which would not have been affected by the introduction of appellants' evidence, appellants did not suffer injury to their substantive rights by the trial court's error in failing to give operation to the doctrine of curative admissibility.
There being no prejudicial error to appellants, we affirm.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
[1] A dismissal of an indictment or information because of a variance between the indictment (or information) and the proof submitted at trial will not preclude further proceedings against the accused for the same offense. Pratt v. State,48 Ala. App. 341, 264 So.2d 571; Shiflett v. State, 37 Ala. App. 300, 67 So.2d 284.
[2] Of course, secondary evidence of the contents of judicial records is admissible where it is shown that such records cannot be produced or where they have been lost or destroyed.Abingdon Mills v. Grogan, 167 Ala. 146, 52 So. 596; McElroy's Alabama Evidence, supra at § 229.02(3).