Appellant, John Charles Spellman, was indicted by the Dale County Grand Jury for the capital murder of Cynthia Ann Wuolukka, in violation of § 13A-5-40, Code of Alabama 1975. At trial, appellant was convicted of the lesser included charge of murder, and was sentenced to a term of life imprisonment.
The record indicates that the victim was abducted from the Zippy Mart on East Andrews Avenue in Ozark, Alabama, where she was a clerk, sometime between 12:30 a.m. and 2:20 a.m., on the morning of August 22, 1983. The evidence indicates that prior to her death, the victim's hands and feet were bound. The victim was found in the early morning hours of August 22, 1983, by the side of a dirt road at Fort Rucker. At the time she was found, she had 80 percent of a brassiere stuffed in her mouth. The pathologist who examined her body determined that the cause of her death was anoxia, lack of oxygen to the body, caused by the brassiere which was stuffed in her mouth.
Appellant was convicted and sentenced to life imprisonment for the murder. It is from this conviction and sentence that he now appeals.
 I
Appellant contends that the trial court improperly admitted parol evidence of the content of writings without a showing that the originals were unavailable. The testimony in question was obtained from Donna Main, who was a tenant at a house owned by the defendant's mother, Cathy Newton.
When Main moved into the house appellant's mother explained that the appellant had been living in the house and she pointed out that some of appellant's belongings were still in the house. Main stated that among his belongings she observed were pornographic books, and books about witchcraft, hypnosis, and the occult, as well as a journal with "John Spellman's name on the front of it."
In the journal were two letters which she read. She testified that one was addressed to appellant and was signed by "Cindy," and basically told the appellant that the writer did not care for him. The other letter addressed "Dear Cindy," appeared to have been written by the appellant and stated essentially that if he could not have her nobody could. Main also read portions of the journal, which contained songs or poems. One of these, entitled "Good Times," referred to John and Cindy.
At trial, appellant objected to Mrs. Main's testimony concerning the contents of the letter on the basis of the best evidence rule, and on the basis that it was hearsay. The trial court stated that it preferred to sustain the objection unless it was shown that the items were no longer available.
Main testified at this point that on one occasion the appellant's mother and another man came to their house and that after they left the journal and letters were not *Page 113 
seen again. Her testimony did not establish, however, that she actually saw them take the journal or letters. Upon this testimony, the trial court overruled the appellant's objection.
Whether or not sufficient preliminary proof concerning the loss of a document is shown is largely a matter of judicial discretion and need only be proven to the trial court's reasonable satisfaction. Powell v. State, 288 Ala. 466,262 So.2d 289 (1972); C. Gamble, McElroy's Alabama Evidence, § 214.01 (3d ed. 1977). Because direct proof of loss is normally not available, it is usually shown by the fact that a diligent but futile search was conducted. J.R. Watkins Co. v. Goggans,242 Ala. 222, 5 So.2d 472 (1942). Upon a review of Main's testimony regarding her search for the documents, we are convinced that the proof of loss was sufficient to admit parol evidence as to their contents. Furthermore, because it was unclear what actually became of the originals, we find that the State was required to do no more than it did to locate them. We find that the trial court in no way erred in allowing the parol evidence of the content of the documents into evidence.
 II
Appellant contends that the trial court erred in refusing to permit the defense to cross-examine State witness Janice Prescott regarding the fact that her husband had been placed in the federal witness protection program, and that this denial violated appellant's right to cross-examine an adverse witness, resulting in denial of due process.
The range and extent of cross-examination are matters committed to the discretion of the trial court, whose ruling will not be revised unless that discretion is abused. Terry v.State, 447 So.2d 1322 (Ala.Cr.App. 1984). Here the appellant was not attempting to cross-examine the witness regarding her own personal history, but that of her husband. Appellant relies, in part, on United States v. Burke, 738 F.2d 1225 (11th Cir. 1984) to support his contention. This reliance is misplaced. In that case, the witness was the person who was a participant in the federal witness protection program, unlike the present case, which involves a spouse. Also, because Burke was a federal prosecution and the witness was involved in the federal witness protection program, an obvious control over the witness could be exposed and possibly affect her credibility. Here, we find no conceivable reason why the participation of the witness's husband in' the federal witness protection program could conceivably affect the credibility of the witness, especially in light of the fact that this is a State proceeding. We find that the trial court did not err in limiting the appellant's cross-examination in this area.
 III
Appellant contends that testimony which established that the tires on the appellant's van "could" have made the tire prints found on the dirt road near the victim's body should have been excluded as being too speculative.
We note that the appellant made no objection to any question asked of the witness who gave that testimony, and made no motion to exclude until the State had completed its entire direct examination. Therefore, the motion was untimely. Any excluding instructions at that late time would certainly serve to confuse the jury, as the motion was directed only at certain portions of the witness's testimony. However, had the appellant's motion been timely, the motion was still not due to be granted. The record reveals that the witness's statement, "could be," in relation to his testimony, was at most evidence of imperfect impression, and the probative value of such evidence is for the jury. Littlefield v. State, 36 Ala. App. 507, 63 So.2d 565 (1952); Butler v. State, 373 So.2d 347
(Ala.Cr.App. 1979).
 IV
Appellant contends that the trial court erred when it ruled that it wanted neither *Page 114 
the State nor the defense to make any further reference to polygraph examinations during the remainder of the trial. The issue first arose after the jury had apparently heard about 30 minutes of an interview between officers and appellant taken at the Bexar County, Texas, Courthouse. In chambers, defense counsel argued that the tape had disclosed statements by appellant in which he refused to take a polygraph examination and that he should be allowed to later elicit testimony to the effect that appellant had later consented to a polygraph test.
A review of the transcript of this recorded statement reveals the following as the only pertinent portion of his statement:
 "SHERIFF: You are absolutely sure Sunday night or early Monday morning you didn't go to the Zippy Mart.
 "JOHN: Absolutely positive. I mean that is definitely.
 "SHERIFF: After consultation with your attorney, would you be willing to take a polygraph to answer that question?
 "JOHN: I don't have any comment at this time about that. I don't know what my attorney would advise me to do so after consultation with him although I have been told that he does not believe in polygraph, I don't know what he could say, but at this time I would have no comment on that. I just gave one." (Emphasis added.)
A reading of this statement clearly reveals that the appellant never actually said that he did not want to take a polygraph examination, and, in fact, he stated that he had just given one.
After a rather lengthy argument in chambers, the trial court ruled as follows:
 "THE COURT: All right. No argument. I am ready to make my ruling. The Court notes that the Defendant has had available to it for some ten days or longer, access to the tape which the Court had not heard prior to its introduction into evidence. Not only that, everything, it is my understanding, was transcribed from that tape in a written statement, and that written statement has been available to the Defendant for a period of time. And, having not made any objection to any portion of the statement or any portion of the tape, they have been admitted into evidence. I will state that I am therefore denying your motion to be allowed to mention his consent — later consent to a polygraph examination, but I will instruct the Jury after the tape has been heard, that they are not to consider any aspects of the tape they have heard, or the statement which is in evidence and which they will have a copy of, concerning the matter of polygraph examination."
After further discussion, the trial court issued the following instructions:
 "THE COURT: Well, I am instructing both parties concerned in this case, that from here on in, after this tape has been heard, not to make mention of polygraph examinations."
Appellant now asserts that he should have been allowed to elicit further testimony under the curative admissibility doctrine. Under this doctrine, if a party introduces illegal evidence, his opponent has the right to rebut such evidence with other illegal evidence. C. Gamble, McElroy's AlabamaEvidence, § 14.01 (3d ed. 1977); Sanders v. State, 48 Ala. App. 589, 266 So.2d 797 (1972). The appellant should not be allowed to invoke this doctrine, because in the actual statement made by appellant he did not state whether he would or would not submit to the polygraph examination, but merely that he would like to ask his attorney's advice. There was nothing to rebut. Furthermore, in view of the fact, as noted by the trial court, that the appellant had access to the contents of this statement some 10 days prior to trial, and raised no objection prior to its submission to the jury, his objection to its contents appears to be untimely. We find no error on the part of the trial court regarding this ruling.
 V
Appellant contends that the trial court erred in refusing to order a new trial on *Page 115 
the grounds that the State did not provide the appellant with potentially exculpatory material as ordered by the trial court. At a pretrial hearing, the trial court made the following ruling regarding the production, for in camera inspection, of questions asked and answers given during polygraph testing of witnesses for the State:
 "THE COURT: I would further like for it to be known, as far as the record is concerned, concerning this particular motion, in the event any of the witnesses who testify in this case on behalf of the State, who have submitted to a polygraph examination in which, not the results so much as far as the polygraph is concerned, but any questions asked or any answers given thereto that are reflected by these files, if they actually testify I would allow the Defense in this case to cross examine that witness for impeachment purposes if any of the questions have been answered differently from this stand. I would go through it at that time. So, those files which — in other words we would have to do that outside the presence of the Jury. I would have to look at any written question and any answer that is in writing in these files, and if it appears different to the Court I will submit it to you and let you cross-examine them for impeachment purposes."
Appellant contends that, because the State did not make any such questions and answers available to the court, the state violated his constitutional rights described in Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
"In order to establish a Brady violation, appellant must prove: '(1) The prosecution's suppression of evidence; (2) The favorable character of the suppressed evidence for the defense; (3) The materiality of the suppressed evidence.' " Knight v.State, 478 So.2d 332 (Ala.Cr.App. 1985). While the appellant has shown that the State did not provide the information to the trial court as ordered, he has failed to establish the favorable character or the materiality of the questions and answers. At most, it appears that the answers given by certain witnesses during the polygraph examination might have been used for impeachment purposes at trial if their trial testimony varied. Brady applies to exculpatory material, and it is evident that the material at issue here did not rise to this level. Undisclosed evidence is material under the Brady rule only if it is reasonably probable that the outcome of the trial would have been different if it had been disclosed. UnitedStates v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481
(1985). This was not the situation in the instant case. Furthermore, no timely objection was made by the appellant regarding the State's failure to comply with the court's order, until the conclusion of the trial, when he made his motion for a new trial. We, therefore, find no error in the trial court's ruling denying appellant's motion for a new trial on these grounds.
 VI
As his final issue, appellant asserts that the trial court erred when it refused to hold an evidentiary hearing on certain disputed facts in the appellant's pre-sentence report. We note that a pre-sentence hearing was held and that the following occurred:
 "At this time I have, and will report for a record standpoint that there has been a pre-sentence investigation and that report has been filed with the Court and a copy of it has been received by the Defendant and this counsel. In response thereto, there has been an objection to the Report of Pre-sentence Investigation and a Motion for Evidentiary Hearing.
 "I notice that this Motion being filed today, contains certain objections to certain portions of the Pre-sentence Investigation Report. More specifically, the interpretations of evidence contained in that report. I have read exactly — I think there are three specific quotes in this Motion; that is as to evidence that Mr. Spellman had torn the newly installed panels from his van, as if to destroy evidence, and (b) clothes of the victim in *Page 116 
Spellman's van, and, (c) a cellmate of Spellman's testified that Spellman admitted to the present offense after dropping six hits of acid.
 "In ruling on this Motion, and I will not require argument, unless you specifically want to argue.
 "MR. GLASSROTH: No sir, Your Honor, everything is contained in that.
 "THE COURT: I will order that, in this Pre-sentence Investigation Report that those three items listed as (a), (b) and (c) be striken from that report and I will assure the Defendant and the State of Alabama, that I heard the evidence in this case orally, and I heard all the witnesses testify, and that I will not consider any summations of evidence or any innuendoes from evidence contained in this Pre-sentence Investigation Report, and will make a determination based upon my recollection of the evidence and other relevant facts that are contained in the Pre-sentence Investigation."
From the above, it is clear that all material judged improper or objectionable in the pre-sentence report was stricken by the trial court and given no consideration in sentencing.
The only other issue raised by appellant at the pre-sentence hearing concerning the pre-sentence report was the determination of his net worth in the report. The trial court heard testimony by appellant's mother regarding the fact that a vehicle and certain electronic equipment, listed in the report as belonging to appellant, were actually her property. The trial court, thereafter, made a determination that the appellant was indigent.
Every matter raised by appellant at the pre-sentence hearing that could have been the basis for an evidentiary hearing was decided in his favor, either by a striking from the record or by a favorable ruling. We, therefore, find that no error can be assigned to the trial court for refusing appellant's request for an evidentiary hearing on the issues.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 467