James Franklin Limbaugh, Jr., was indicted for the offense of murder, in violation of § 13A-6-2, Code of Alabama 1975. The jury found him guilty as charged in the indictment, and he was sentenced to life imprisonment. On appeal, this Court reversed the conviction and remanded the case for further proceedings.Limbaugh v. State, 549 So.2d 582 (Ala.Cr.App. 1989). On remand, Limbaugh was arraigned again and he entered a plea of not guilty. A jury was struck, and at the conclusion of the trial the jury found Limbaugh guilty as charged in the indictment, and he was sentenced to life imprisonment. He presents five issues on this appeal.
 I
Limbaugh contends that the trial court erred in denying his motion for mistrial on the ground that the court abused its discretion in replacing with an alternate a juror whom the prosecution had struck but who had mistakenly been placed on the panel.
In striking Limbaugh's jury, both the State and defense counsel used peremptory challenges until a jury of 12 principal jurors and two alternate jurors remained. It is undisputed that the State struck juror number 29 and that juror number 26 was selected to be on the panel.
During opening argument, the prosecutor discovered that juror number 29, who had been struck by the State, was sitting on the jury, while juror number 26, who had been selected for the jury, was not sitting on the jury. The prosecution immediately brought this discovery to the court's attention, and Limbaugh moved for a mistrial on the ground that there was a defect in the jury panel that was selected and jeopardy had attached. The State informed the Court that juror number 26 was not now available because she had subsequently been selected on another case that was in progress. The court denied the motion for mistrial and replaced juror number 29 with an alternate juror. *Page 7 
"A mistrial should not be granted unless there is a manifest necessity to discharge the jury or unless the ends of justice would otherwise be defeated." Rocker v. State, 443 So.2d 1316,1319 (Ala.Cr.App. 1983). The trial court is, moveover, allowed broad discretion in deciding whether a ground for a mistrial exists. Id.
Section 12-16-100(c), Code of Alabama 1975, provides for the use of an alternate juror "if it becomes necessary for an alternate to replace a principal juror." "The use of alternate jurors under this salutary statute permits the court to avoid a costly and burdensome mistrial that would otherwise be required when a juror during the trial becomes unable to perform his duties satisfactorily." Rocker, supra,443 So.2d at 1320.
In the present case, we find no error in the ruling of the court discharging juror number 29 as a principal juror in favor of the first alternate under the provisions of § 12-16-100(c). Subsection (c) has been construed to allow an alternate juror to replace an absent juror who has received unauthorized communications. See Calhoun v. State, 530 So.2d 259, 264
(Ala.Cr.App. 1988), and Rocker, supra, 443 So.2d at 1320, respectively. Under the circumstances of this case, in which juror number 26 was no longer able to serve on the panel, we construe § 12-16-100(c) to permit the Court to rectify an administrative error by replacing an unauthorized principal juror with an alternative. We, therefore, hold that the trial court did not abuse its discretion in replacing juror number 29 with an alternative, and, accordingly, Limbaugh's motion for mistrial was properly denied.
 II
Limbaugh contends that the trial court erred in denying his motion for mistrial on the ground that the State failed to provide Limbaugh with potentially exculpatory material in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963). We disagree.
Immediately prior to trial, defense counsel requested that the State provide Limbaugh with a copy of the grand jury testimony of State witness William Helton. The State complied with that request, and the court, at defense counsel's request, then gave defense counsel an opportunity to review the testimony for potentially exculpatory material. Prior to opening statements, the Court asked defense counsel if he had had time to read the testimony, and defense counsel assured the court that he had had ample time to read the testimony.
In the middle of the trial, defense counsel moved for a mistrial on the ground that it appeared from the grand jury transcript that there might be some exculpatory material that the State might have in its possession which was not provided to defense counsel pursuant to the discovery order.
The pertinent grand jury testimony is as follows:
 "MR. RUMSEY: Page one of the Grand Jury testimony. (MR. RUMSEY READING) 'I believe that I prosecuted you for the murder of Dennis Chandler and you got a life sentence. Yes, sir. Then you know at one time you indicated that you didn't think Limbaugh would be prosecuted. Do you remember telling me that? That you didn't feel like — told the investigator that you didn't feel like he would really be prosecuted? No, sir. You don't remember that, saying that?' "
Although Limbaugh admits that the grand jury testimony isnot exculpatory, because Helton denies making the statement, he nevertheless contends that the testimony implies that the State may have in its possession exculpatory material such as a statement from Helton to the prosecutor or the prosecutor's investigators that Limbaugh would not be prosecuted because he was a "Limbaugh."
The prosecutor denied the existence of any such statement but offered to allow Limbaugh a continuance to search through his files and interview his investigators for any potentially exculpatory material. Defense counsel declined the offer for a continuance, and the trial court denied its motion for a mistrial. *Page 8 
"In order to establish a Brady violation, appellant must prove: '(1) The prosecution's suppression of evidence; (2) The favorable character of the suppressed evidence for the defense; [and,] (3) The materiality of the suppressed evidence.' "Knight v. State, 478 So.2d 332, 335 (Ala.Cr.App. 1985) (quotingMonroe v. Blackburn, 607 F.2d 148, 150 (5th Cir. 1979), cert. denied, 446 U.S. 957, 100 S.Ct. 2929; 64 L.Ed.2d 816 (1980)). "Undisclosed evidence is material under the Brady rule only if it is reasonably probable that the outcome of the trial would have been different if it had been discovered," Spellman v.State, 500 So.2d 110, 115 (Ala.Cr.App. 1986).
In the case at bar, Limbaugh has failed to show that any exculpatory evidence existed, much less that he suffered any prejudice by an alleged suppression thereof. Limbaugh admitted that Helton's grand jury testimony was not exculpatory, because Helton denied making the statement that he did not think Limbaugh would be prosecuted. Limbaugh not only failed to establish the existence of any "statements" of Helton to the contrary, but also failed to establish that any such alleged "statements" of Helton were deemed exculpatory to Limbaugh. Hence, the trial court properly denied Limbaugh's motion for mistrial on this ground.
 III
Limbaugh contends that the trial court erred in denying his motion for a new trial on the ground that a juror failed to properly and correctly respond to a question during voir dire examination of the jury.
During voir dire examination of the jury, the following exchange occurred:
 "MR. ADCOCK: Have any of you or your relatives ever been a victim of a crime? No one? Sir?
"JUROR CASH: How serious a crime?
"MR. ADCOCK: Pardon me?
"JUROR CASH: How serious a crime?
 "MR. ADCOCK: Well, have you ever been a victim of any type misdemeanor or felony where a case was actually made. You have?
 "JUROR CASH: I have not. Members of my family have."
The record reflects that during voir dire the only juror who responded to the question was Mr. Cash.
In his motion for new trial, Limbaugh alleged that another juror, Mary E. Dale, had a daughter who was killed in a car bomb explosion and, therefore, that Mrs. Dale had failed to properly answer the voir dire questions set out above.
A hearing was held on Limbaugh's motion, at which Mrs. Dale testified that what had happened to her daughter had had no effect whatsoever upon her reaching a true and fair verdict in this case. Mrs. Dale testified, moreover, that she understood defense counsel's question to be whether she had ever been the victim of any type of misdemeanor or felony where a case was actually made. She testified that because no criminal case was ever brought as a result of her daughter's death, she did not answer the question. Based upon this testimony, the trial court denied Limbaugh's motion for a new trial on this ground.
It is axiomatic that the decision of the trial court to deny a motion for new trial will not be disturbed on appeal unless there is a clear showing of abuse of discretion. Nichols v.State, 500 So.2d 92, 96 (Ala.Cr.App. 1986):
 "Although the defendant has a right to have questions answered truthfully on voir dire examination of the venire, the failure of a juror to make a proper response to a question regarding his qualifications to serve as a juror does not automatically entitle the defendant to a new trial. The proper inquiry is whether the defendant's rights were prejudiced by the juror's failure to properly and correctly respond."
Knighten v. State, 402 So.2d 363, 364 (Ala.Cr.App. 1981).
It is clear from the record that the jury did not understand defense counsel's initial question and that defense counsel clarified his initial question by asking the jurors whether they had ever been a victim of any type of misdemeanor or felony where a *Page 9 case was actually made. Mrs. Dale reasonably believed that the second question was the question before her and, because her daughter's death did not result in a criminal prosecution, she did not respond to this inquiry. Mrs. Dale thus did not fail to properly and correctly respond to the final question before her on this subject, and the trial court properly denied Limbaugh's motion for new trial.
We note that even if, arguendo, Mrs. Dale failed to properly respond to the voir dire questions, Limbaugh failed to establish prejudice as a result of her alleged omission, particularly in light of her testimony that the circumstances surrounding her daughter's death had no effect upon her ability to reach a fair and true verdict in this case.
 IV
Limbaugh contends that the trial court improperly restricted his cross-examination of Investigator Frankie Wallis. We disagree.
On January 30, 1987, Limbaugh was questioned at the Childersburg Police Department. At that time, Limbaugh waived his Miranda rights and made a statement to Investigator Wallis explaining his whereabouts on January 23, 1987, the day Dennis Chandler was killed. This statement did not indicate Limbaugh's presence at the scene of the murder or explain his being seen with the victim on the day of his death.
On February 6, 1987, after his arrest in Texas, Limbaugh waived his Miranda rights and made an exculpatory statement to Investigator Wallis, admitting his presence at the scene of the crime but denying any involvement in the charged offense.
During Wallis's testimony at trial, the jury was removed from the room and Wallis testified about these statements on voir dire. The State represented to the trial judge that Wallis would be questioned in the jury's presence only about the January 30, 1987, statement, and the prosecutor made an oral motion in limine seeking to prevent defense counsel from questioning Wallis about the February 6, 1987, statement. Defense counsel admitted that the contents of the February statement were inadmissible but nevertheless wanted to ask Wallis, on cross-examination, whether he took a statement from Limbaugh on February 6, 1987. The trial court granted the State's motion.
"The scope of cross-examination must of necessity be committed to the discretion of the trial court, and in the absence of abuse of discretion, the trial court's ruling will not be reversed." Lomax v. Speed, 507 So.2d 455, 458 (Ala. 1987).
It is clear from defense counsel's admission at trial that the contents of the February 6, 1987 statement were hearsay, not covered by the res gestae exception, and were properly excluded by the trial court. See Williams v. State,536 So.2d 169 (Ala.Cr.App. 1988), and Kennedy v. State, 469 So.2d 1333
(Ala.Cr.App. 1985).
Defense counsel's "back-door" attempt to get the inadmissible statement before the jury by asking Wallis whether he took a statement of Limbaugh on February 6, 1987, violates the form, if not the substance, of the hearsay rule. The trial court was therefore within its discretion in limiting Limbaugh's cross-examination in this matter.
 V
Limbaugh contends that the evidence was insufficient to support the verdict and that the trial court erred in denying his motion for judgment of acquittal.
Limbaugh was indicted for intentionally causing the death of the victim, Dennis Chandler, by cutting or stabbing him with a knife in violation of § 13A-6-2(a)(1), Code of Alabama 1975, which provides that "[a] person commits the crime of murder if: (1) with intent to cause the death of another person, he causes the death of that person or of another person."
Limbaugh attacks the sufficiency of the evidence presented at trial in three ways: 1) he contends that there was insufficient circumstantial evidence presented; 2) he contends that there was insufficient evidence of his complicity in the crime; and, 3) *Page 10 
he contends that the testimony of William Helton, an accomplice who is presently serving a life sentence for the murder of Dennis Chandler, was not sufficiently corroborated. We disagree.
"Circumstantial evidence may afford satisfactory proof of the corpus delicti, and, if facts are presented from which a jury may reasonably infer that a crime has been committed, the question of the defendant's guilt or innocence must be submitted to the jury." Carroll v. State, 440 So.2d 1168, 1170
(Ala.Cr.App. 1983). "Circumstantial evidence that points to the guilt of the accused is entitled to the same weight as direct evidence." Knight v. State, 548 So.2d 647, 650 (Ala.Cr.App. 1989).
Section 13A-2-23, Code of Alabama 1975, defines "complicity" as follows:
 "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
 "(1) He procures, induces or causes such other person to commit the offense; or
 "(2) He aids or abets such other person in committing the offense; or
 "(3) Having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make."
"The participation in a crime and the community of purpose of the perpetrators need not be proved by direct or positive testimony, but may be inferred from circumstantial evidence."Tice v. State, 460 So.2d 273, 279 (Ala.Cr.App. 1984).
Section 12-21-222 provides:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
This court has held:
 "The formula applied to the corroboration statute, Ala. Code § 12-21-222 (1975), requires that the evidence of the accomplice must first be 'eliminated' and then, if upon review of all other evidence before the trial court at the time of the motion to exclude, there is found to be sufficient incriminating evidence which would tend to connect the accused with the crime, sufficient corroboration exists."
Harris v. State, 420 So.2d 812, 817 (Ala.Cr.App. 1982).
At trial, Helton testified that on the afternoon of January 23, 1987, he, Dennis Chandler, Limbaugh, and Robert Barnes, Jr., were riding in Chandler's Ford Galaxie automobile; he said they made stops at Allen's '76 gasoline station and a State A.B.C. Board store to purchase liquor. Helton further testified that the four then drove to a "mini-mart" in Odena to purchase more liquor but that the proprietor chased them away. According to Helton, Barnes then began driving Chandler's car, due to Chandler's intoxication, and the four proceeded to a Crystal gasoline station on the Talladega highway. Helton testified that he and Chandler went in the store and that they were asked to leave when Chandler began throwing food off the racks. The four then continued riding in the car and Chandler began hitting Barnes. Barnes eventually stopped the car, and — according to Helton — Barnes, Limbaugh, and Helton beat up Chandler and put him in the back seat of the car. According to Helton, Limbaugh then stated that they were going to have to kill Chandler to prevent his telling anyone about the fight. Barnes then drove the four men to a remote place known as "Blue Hole" and stopped the car on a dirt road. Helton further testified that he walked off and that when he returned, Chandler's body was in front of the car, Limbaugh was vomiting, and Barnes was wiping blood from a knife blade onto his pants. According to Helton, the three men then dragged Chandler's body to the creek and threw the body into the creek. The three men then returned to Chandler's car, which was stuck in the mud, and Limbaugh took the money out of Chandler's wallet and Helton threw the wallet in a field. The three then *Page 11 
walked to a trailer nearby and obtained a ride to Limbaugh's house from a relative of Limbaugh. According to Helton, Limbaugh changed clothes and removed his stained camouflage pants.
Excluding Helton's testimony, there was clearly ample circumstantial evidence presented establishing Limbaugh's complicity in the crime and sufficiently corroborating Helton's testimony.
Terry Lynn Vick testified that Chandler left Vick's house around 2:30 p.m. on January 23, 1987, and that he was intoxicated because they had purchased whiskey at Allen's '76 station. Judy Shockley, of the Childersburg A.B.C. store, testified that she had a receipt showing a purchase of Skol vodka at 3:55 p.m. on January 23, 1987, which vodka was recovered in Chandler's car. Sheila Johnson Hill, of Allen's '76 station, testified that Chandler came in twice that day and that he appeared intoxicated. Michael Vanzant testified that he made a photograph from the Allen's '76 security videotape made on January 23, 1987, which showed Limbaugh, Barnes, and Chandler inside the store.
Tina Marie Warlick testified that she saw Chandler's car on January 23, 1987, with Chandler, Helton, and two others in it. Warlick noticed that Chandler was intoxicated and took down his tag number. James Raymond Hammonds of the Crystal station testified that four individuals in a white Ford drove up to his store on January 23, 1987, and that Helton and Chandler came in the store to purchase beer but Hammonds refused to sell Chandler beer because he was intoxicated.
Gregory Scott Nicholson, Limbaugh's brother-in-law, testified that on January 23, 1987, Helton, Limbaugh, and Barnes walked to his home near Blue Hole and that he gave them a ride back to Childersburg.
Dr. Joseph Embry, a coroner, testified that he performed an autopsy on Chandler, whose body was found in a creek four miles downstream from Blue Hole, that the cause of death was a six-inch incised wound consistent with a knife wound to the victim's neck, and that Chandler had six broken right ribs and one broken left rib.
Steven Drexler, of the Department of Forensic Sciences, testified that hair samples found in Chandler's car matched those samples from Limbaugh. Larry Hughes of the Department of Forensic Sciences, testified that the blood found on Limbaugh's camouflage pants matched Chandler's blood and that there was human blood on a black knife obtained from Limbaugh's wife. Marietta Prevost, a certified latent fingerprint examiner from the Department of Public Safety, testified that a palm print from the trunk of Chandler's car belonged to Limbaugh.
Based upon the clear circumstantial evidence, which established Limbaugh's complicity in the crime and which sufficiently corroborated Helton's testimony, the trial court properly denied Limbaugh's motion for judgment of acquittal.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, A Retired Supreme Court Justice, and his opinion is hereby adopted as that of the Court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.